No. 31.—ALBERT C. MATTHEWS, plaintiff *in* error, *vs.* WILLIAM PASS, defendant in error.

:[1.] A person aids a debtor to remove himself and his property out of the State : *Held,* that an action on the case does not lie against that person, at the suit of the creditor.   · ..

Case.   Decision by Judge ANDREWS, March Term, 1855.

Albert C. Matthews brought an action against William Pass, alleging that one James Bridges was indebted to him in the sum of five hundred dollars, on promissory notes and accounts; and that William Pass, well knowing the same, and intending to injure and defraud said Matthews, by causing him to suffer the loss of said sums of money, did then and there conspire, and fraudulently and feloniously agree with the said Bridges, to aid him in running away from the County and State and carrying off his property, viz: 4 slaves, worth $2500, and other property worth $500 ; and did actually aid said Bridges in running away from said County and State and carrying off his property : whereby, the said debt due by Bridges to Matthews, became totally lost, to the damage, &c.

Defendant's Counsel demurred to this declaration, on the ground that no cause of action was set forth therein.

The Court sustained the demurrer, and this decision is assigned as error.

THOS. W. THOMAS, for plaintiff in error.

T. R. R. COBB, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] Is there any cause of action set forth in the declaration?

The plaintiff's argument that there is, if I understand it aright, may be stated as follows:

1. You may have an action in some form, against another, for every act of his which is unlawful and which injures you.

2. When no form of action is specially given, you may have an action on the case.

3. Any act which a law impliedly forbids, is unlawful; as much so as is any act which a law expressly forbids.

4. The Attachment Law impliedly forbids a debtor to remove out of the State; and thus, to place himself beyond the reach of ordinary legal process.

5. It is therefore unlawful in a debtor to remove out of the State.

6. If it is unlawful in a debtor to remove out of the State, it must be unlawful in another person to aid him so to remove.

7. No form of action is specially given against such other person; therefore, he may be sued in case.

The fourth of these propositions, to say nothing about the others, cannot be admitted.

A man, even if he is a debtor, is a freeman until he has been arrested by some legal process, at the suit of his creditor. Until that has been done, he has the right to take his person whithersoever he will.

Equally has he the right to remove his property. As to his property, there certainly is no law which makes it unlawful for him to send or remove that out of the State. Until

Matthews *vs.* Pass.

his creditor has obtained a lien on his property, he has full control over it.

There is nothing in the Attachment Law inconsistent with this doctrine. Indeed, the object of the Attachment Law seems to have been to obviate the consequences of the truth of this very doctrine. It says to a creditor, this, your debtor, has the right to take himself and his property out of the State; but while he is going, you may attach his property *if you can*; if you cannot, you will get no lien on it; the property will be his to sell, or to keep, or to remove.

But if it is not an unlawful act in a debtor to remove from the State, and to carry with him his property, it is not an unlawful act in another to assist him to remove, and to assist him to carry with him his property.

Again: Will the law ever hear a plaintiff unless he can state two things: first, that he has been damaged; secondly, that the damage was, *to a certainty*, the effect of the act of the defendant. If the plaintiff says I have been damaged, but it is not certain whether I should not have been equally damaged if the defendant had not done what I charge him with having done, can he be heard? Does he state a cause of action?

What more than this does the plaintiff in this case say? He would have it understood that it would have been his intention to sue his debtor, Bridges, and that he was prevented from executing this intention which he would have had, by the removal of Bridges, with his property, from the State. Admit that what would have been his intention, is a provable thing; yet, how can it ever be made appear that the removal of Bridges and his property would not have happened, even if the defendant, Pass, had taken no part in such removal? How can it ever be made appear that Bridges would not have been able to effect his removal without the aid of any one, or would not have been able to get the aid of some person other than Pass?

There is no precedent for this case; and the case is such, that if there had been law for it, there would have been a pre-

cedent for it. · It is hardly possible that there would not have-been. ·Cases like this have been continually occurring ever since the birth of credit. Has there ever been a time when men were not aiding debtors to evade the payment of their debts? Yet, there is not to be found an instance of an action on the case against such men, by the creditor. If the· law had been such as to give the creditor that action, should· we not, at some time, have seen the creditor resorting to the action? Cases may be of such a character, that if they are. without the support of a precedent, it may be almost certainly said, that it is because they are without the support of law. And this is one of them.

· If we were at liberty to take the decisions of other States as precedents for the decisions of this, we might, with ease, find them against this case. *Lamb vs. Stone*, (11 *Pick.* 527,) is a strong one against it. In that case, the many and grave practical difficulties with which a case of this kind has to contend, are well stated.

This plaintiff claims from the defendant damages to an amount equal to the amount of his debts. Suppose he should recover damages to that amount, what would become of those debts—would he be entitled to recover them, too, out of the debtor, if he could find him in another State? Would they be extinguished? The recovery against Pass being in *tort*, he could set up no title to them by subrogation or otherwise. Indeed, Pass would not be entitled to an action over against Bridges, for his re-imbursement. But I suppose the plaintiff would be entitled to go on against his debtor, Bridges, if he could find him and collect the debts out of him. It is to be remembered that Bridges is to be considered amply able to pay the debts, wherever he is, for he carried away with him property worth much more than they amount to. Nor is it to be assumed, that because Bridges is outside of this State, he is outside the pale of law. It is not to be assumed, that merely because the creditor lives in one State and the debtor in another, the debt is worthless. And doubtless a little pains on the part of this plaintiff, would enable him to·

find out where Bridges is, if, indeed, he does not already know. The strong probability therefore is, that if the plaintiff should be allowed to recover the amount of his debts in an action on the case out of Pass, he would then follow up Bridges and recover out of him the same amount in an action of assumpsit. Now ought a suit that could possibly work out such a result, to be entertained, unless it was well supported by precedents or by positive law ? Ought not the plaintiff to be, at least, required to state, as a part of his case, that he had offered Pass to give him up the debts on Bridges, if he, Pass, would pay him the damages which he claimed of him ?

We think the judgment of the Court below ought to be affirmed.