## GRAVES v. HORTON.

1. If a debtor fraudulently conveyed his property to avoid the payment of his debts, and the grantee conveyed it to an innocent purchaser without notice, this did not create any such relation of debtor and creditor between the fraudulent grantee and a creditor of his grantor (if it should be assumed that the plaintiff was a creditor at the time of the transfer) as to authorize such creditor to bring an action of contract directly against the fraudulent grantee alone to recover the amount of the indebtedness of the grantor, who had become a bankrupt.

2. An action on the case for the fraud of the defendant in purchasing property from a person who afterward became a bankrupt, withholding the title from record, and thus permitting his grantor to obtain credit on the faith of it, and later selling the property to an innocent third party, can not be maintained by one who sold personalty to the grantor on credit, but who had no lien.

(a) The allegations touching collusion between the grantor and grantee to defraud creditors of the former were not such as to authorize a recovery by the plaintiff, who had no judgment or lien, in a suit against the grantee alone.

3. The allegations were not sufficient to support an action of deceit.

4. The action in this case was not an equitable proceeding to subject assets of a debtor, or their proceeds or value in the hands of a fraudulent grantee, to the payment of the debt of the grantor; nor was any recovery sought or judgment had against the grantor, who was a bankrupt.

Argued February 5,—Decided June 23, 1909.

Equitable petition. Before Judge Wright. Floyd superior court. August 3, 1908.

Robert W. Graves, doing business as Robert W. Graves and Company, filed his petition against W. N. Horton. He alleged in substance as follows: "On the—day of August, 1905," John M. Smith bought of the plaintiff one car-load of coal, which was delivered on September 1. "A few days thereafter" Smith bought another car-load of coal of the petitioner, which was delivered on September 9. The purchase-price of the two cars aggregated $131.80. Smith bought the coal with the avowed purpose of using it "at his own gin in the fourth ward of the city of Rome," and stated to the plaintiff that he would haul it with his (Smith's) own teams. The plaintiff sold the coal in good faith, believing that Smith owned the gin, as he claimed, when he bought the coal. On or about October 25, 1905, proceedings in bankruptcy were instituted against Smith, and the plaintiff was listed among his creditors. After these proceedings were filed Horton produced a

deed to the gin property above referred to, and it covered all the machinery and personal effects on the property. The deed purported to have been made on April 4, 1905, with an ostensible consideration of $2,000, and purported to convey the undivided half interest of Smith in the gin property, and the undivided half interest of Smith in certain other real estate in the city of Rome. Smith is insolvent and has been so since the date of this deed, being also insolvent at the time he purchased the coal. Horton knew all these facts. Smith has been adjudicated a bankrupt, owing debts to the amount of approximately $15,000, with assets of about $1,100, which he asks to be set aside to him as a homestead. Plaintiff is unable to collect of Smith for the coal sold him. He charges, that Smith and Horton entered into a combination for the purpose of defrauding the creditors of Smith, that the sale of the land was a sham, that the consideration in the deed was fictitious, and that it was not executed on the 4th day of April as appears on its face, but was executed "after the 15th day of August, 1905." Smith returned "said......for taxes for the year 1905," late in the summer, and made the usual affidavit that the property belonged to himself and Horton as partners. The deed was withheld from the records by Horton, so that Smith might obtain credit and transmit the proceeds to Horton for their joint and several benefit, and to defraud Smith's creditors by taking away from them any chance to collect their debts. Throughout the year 1905, and up to the time proceedings in bankruptcy were instituted, Smith remained in possession of the property. He not only bought the coal to run the gin and the sawmill connnected with it, but during the months of August, September, and October, besides other months, he purchased hundreds of dollars worth of other merchandise of various kinds on a credit, having it charged to himself, and applied it to the improvement of this gin and mill property. Horton knew all these facts, and he acquiesced in and encouraged them. Though Horton enjoys the benefits of these debts, he now disclaims all liability on any of them. Since bankruptcy proceedings have been instituted against Smith, Horton has filed deeds, purporting to have been made in the early part of the year 1905, to all of Smith's real estate "of any considerable value" in Floyd county, this being the first act on the part of Horton to put the public and Smith's creditors on notice of his

ownership of Smith's assets. One of the deeds referred to from Smith to Horton purported to have been executed on March 11, 1905, for a consideration of $1,521, and conveyed an undivided half interest in certain farm property in Texas Valley district of Floyd county. This deed was withheld from the records by Horton with the fraudulent purpose herein referred to, until the 13th day of November, 1905, some time after Smith was adjudicated a bankrupt. Since the dates on which these deeds purport to have been made, Horton has advised the public and Smith's creditors to extend Smith credit, as Smith had plenty of real estate to pay all his debts and have money besides, and that he was worthy of the highest credit. The plaintiff has made demand of Horton for the indebtedness due to him, and Horton refuses to pay it.

By amendment the plaintiff alleged substantially as follows: In the negotiations for the purchase of the coal Smith represented to the plaintiff that he was the proprietor of the gin property for the use of which the coal was bought, and it was sold on the faith thereof. Before Horton made it known that he had taken over from Smith the gin property, a petition in involuntary bankruptcy was filed against Smith, and on November 2, 1905, he was adjudicated a bankrupt. Smith and Horton, in contemplation of the bankruptcy proceedings, on the 7th day of October, 1905, sold the gin property to the Georgia Cotton Oil Company, an innocent purchaser. At that time the deed from Smith to Horton had not been made public, and Smith was actively engaged in the consummation of the sale to the Georgia Cotton Oil Company, which sale to an innocent purchaser was made in order to place the property, out of which he expected to realize his debt, beyond the reach of the plaintiff. Plaintiff does not sue Smith in this case, because he is a bankrupt, and because of the facts set out in the petition and amendment. He charges that Smith was used by Horton in the purchase of the coal, keeping back in a secret manner Horton's interest in and relation to the purchase.

Upon motion the case was dismissed on the ground that no sufficient cause of action was alleged. The plaintiff excepted.

*Lipscomb, Willingham & Doyal,* for plaintiff.

*F. W. Copeland* and *M. B. Eubanks,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

This was not a proceeding to subject property to the payment

of a debt. The plaintiff had no judgment against his debtor, and did not sue him, and could not do so, because the debtor had been adjudicated a bankrupt. He could not subject either property or its proceeds or its value to a judgment against his debtor, because he had no judgment and was not proceeding to obtain one in this action. Neither did he have a lien of any kind on the property. The case does not fall within the ruling in *Bigby* v. *Warnock*, 115 *Ga.* 385 (41 S. E. 622, 57 L. R. A. 754). It was a direct suit, by one claiming to be a creditor of a bankrupt, against a person alleged to be a fraudulent grantee from the debtor of the plaintiff, who had sold the property to an innocent third party for value. If it can be maintained by the plaintiff against the defendant, it must be either as an action of contract or an action of tort. The petition did not allege that the defendant was the concealed principal of the person who created the debt, but conceded that it was the debt of the latter, and excused failure to sue him on the ground that he was a bankrupt. A mere general expression that the defendant "used" the original debtor for fraudulent purposes does not amount to an allegation of agency. Neither did the petition allege any partnership, suretyship, guaranty or assumption of the debt by the defendant. No contract, express or implied, between the defendant and the plaintiff was set out. If the grantee still held the property, it might perhaps be subjected, but he could not be sued primarily for the amount of the debt. If he disposed of the property, this would not make him an original debtor to the plaintiff. If there was a right of action on behalf of creditors generally to recover property or its proceeds or value, apparently it would be in the trustee in bankruptcy.

If the action should be treated as sounding in tort, it was still fatally defective. There was no allegation of any direct representation by the defendant to the plaintiff. It was alleged that the original debtor executed a deed to his mill property to the present defendant, which was dated April 4, but was actually executed "after the 15th day of August, 1905." The date of the sale of one car-load of coal by the plaintiff to his debtor was alleged to have been "on the——day of August, 1905," and the delivery on September 1, following. The other car-load was alleged to have been sold "a few days thereafter," and the delivery made on September 9. Thus it does not appear whether the plaintiff was a creditor

when the deed was conceded to have been executed to the defendant. While there were some general allegations of collusion and concealment, .there was none such as to show a right of action on the part of a subsequent creditor. See, on this subject, *National Bank of Cartersville* v. *Bayless*, 96 Ga. 684 (23 S. E. 851). The deed to "the gin property" recited a consideration of $2,000. This was charged to be fictitious. Another deed referred to recited a consideration of $1,521. There was no allegation as to the actual value of the property transferred. Nor was there any direct statement that the defendant received the coal bought from the plaintiff, or that it was used by him. The general language as to defrauding creditors and enjoying benefits therefrom will not take the place of a specific allegation as to this plaintiff, in an action of tort. The debtor went into bankruptcy in October, owing debts approximating in amount $15,000, and claiming as assets about $1,100, which he asked to be set apart to him as an exemption. If this rendered the grantee of the debtor liable to the plaintiff for the amount of the debt due to him, in an action of tort against such grantee, and similarly rendered him liable to each of the other creditors, he might be held liable to pay the amount of all the debts of the bankrupt, regardless of the value of the property received by him.

In *Matthews* v. *Pass*, 14 *Ga.* 141, it was held, that, where a person aids another to remove himself and his property out of the State, an action on the case does not lie against that person at the suit of a creditor. That case is not identical with this, but much of the reasoning of Benning, J., is in point. Among other things he said: "Cases like this have been occurring ever since the birth of credit. Has there ever been a time when men were not aiding debtors to evade payment of their debts? Yet there is not to be found an instance of an action on the case against such men, by the creditors." In *Western Railroad* v. *Thomas & Prescott*, 60 *Ga.* 313 (27 Am. R. 411), it was held (Jackson, J., dubitante), that where the agent of a railroad company obstructed an officer in levying an attachment upon goods loaded on one of the company's trains, and they were removed out of the State by the running of the train, this did not furnish a cause of action against the company, at the instance of the plaintiff in attachment. In *Lamb* v. *Stone*, 11 Pick. 527, it was held that an action on the

case for the fraud of the defendant in purchasing personal property of the plaintiff's debtor and aiding the debtor to abscond, in order to prevent the plaintiff from enforcing payment of his debt by attaching the property or arresting the body of the debtor, can not be sustained. That case was not an action of conspiracy or case in the nature of conspiracy; nor is there any definite allegation of a conspiracy to defraud *the plaintiff* alleged here. After noting that there was no allegation of a conspiracy in the Lamb case, Martin, J., added: "It will, however, be perceived that some of our reasoning would apply to such an action, as well as the one before us."

In the well-considered case of Moody *v.* Burton, 27 Me. 427 (46 Am. D. 612), it was held, that, where a fraudulent conveyance of property was made for the purpose and with the intent to defraud creditors, an action on the case to recover damages on account of such fraud, brought by one of the creditors against the parties to the fraudulent conveyance, could not be sustained. The reasoning is so clearly expressed that we will quote it somewhat at length. In the opinion Shepley, J., said: "Creditors may consider such conveyances to be unlawful and void, and may cause the property to be applied to the payment of their debts by the use of any of the different legal and equitable processes applicable to their case and afforded by the law for that purpose. . . If such an action as this may be maintained against a fraudulent vendee, it may, upon like principles, against the fraudulent vendor or against any particeps fraudis. . . The debt of the creditor will not be satisfied pro tanto by a recovery and collection of damages from a vendee or a particeps fraudis. A debt due from one person can not be satisfied by the recovery of damages from another person, unconnected with and a stranger to it, without some statute provision. The creditor would recover damages in satisfaction for an injury suffered, not on account of a debt due and in satisfaction of it. How are the damages, which a creditor may thus recover, to be proved and estimated? The plaintiff had obtained no lien on the property conveyed by attachment, judgment, or in any other manner. Had no special property in or claim to it. The only proof of loss or injury, which he could make, would be, that his debtor had fraudulently conveyed his property without having received any value for it, and with the intent to

avoid the payment of his debt. And that he had no other means of obtaining payment. All other creditors could make the same proof. Upon such proof he could not be entitled to recover the amount of his debt; for that is still subsisting, and it may yet be collected. Nor could he be entitled to recover the value of the property conveyed; for to that he had no better claim than other creditors. He has not therefore lost it. If it had not been fraudulently conveyed, it was as probable that it might have been applied to the payment of other debts, as to his own. The debtor might have disposed of it fairly and for a valuable consideration, or have lost it by accident or misfortune. The only loss or injury shown by the proof would be, that he had been deprived of a chance or possibility of obtaining payment from that property. This would be stating his loss or injury too strongly; for he would still have the chance of attaching or securing it, or its proceeds, in the hands of the fraudulent holder. A jury would be authorized then to estimate the value only of his chance to secure it and have it applied to the payment of his debt while in the hands of his debtor; for this only has he lost. There would be no data, tables, or other means afforded, by which such a chance could be estimated. The loss or injury would be too uncertain and remote for legal estimation. An action like the present can be maintained only by proof of a direct, certain, and material injury." See also Smith *v.* Blake, 1 Day (Conn.), 258; Randall *v.* Hazelton, 12 Allen (Mass.), 412; Wellington *v.* Small, 3 Cush. (Mass.) 145 (50 Am. D. 719) ; Green *v.* Kimble, 6 Blackf. (Ind.) 552; Bradley *v.* Fuller, 118 Mass. 239.

The present case also is not to be confused with those where, by means of fraud or conspiracy, a specific lien on property has been displaced or lost. Nor are there such allegations as would support an action of deceit. The petition does not appear to have proceeded on the theory of an action of that character, and it does not sufficiently allege any false affirmation to the plaintiff, with intent to defraud him, made by the defendant or with his authority, and damages therefrom. It does not come within such rulings as that in Pasley *v.* Freeman, 3 T. R. 51, Smith's L. C. (9th ed.) 1301. Whether, therefore, the suit be treated as one sounding ex contractu or ex delicto, it was properly dismissed.

*Judgment affirmed. All the Justices concur.*