## DIXIE MANUFACTURING COMPANY *et al. v.* RICKS.

1. The evidence as set out in the first division of the opinion is not inadmissble under § 5860 of the Civil Code of 1910, which provides that no attorney shall be competent or compellable to testify in any court in this State for or against his client to any matter or thing knowledge of which he may have acquired from his client by virtue of his relations as attorney, or by reason of the anticipated employment of him as attorney, etc.
2. Under the act of 1918 (Acts 1918, p. 136), it was not error to decline to allow movants to introduce in evidence the ·original order of the superior court dissolving the Dixie Paper and Box Company as a corporation, more than four months before the filing of the plaintiff's suit.
3. Grounds of a motion for new trial which are expressly abandoned will not be considered by this court.
4. Where on the trial of a case a motion to nonsuit is overruled, and the exception to such ruling is not preserved in the lower court, such ground of exception can not be entertained by the Supreme Court in a motion for new trial.
5. The charge complained of, to the effect that even though there was a bona fide indebtedness due by the mortgagor to the mortgagee, if the mortgage was made with intent to hinder, delay, or defraud the creditors˜of the mortgagor, such mortgage would be void, is not erroneous.

6. The charges set out in the sixth division of the opinion are not erroneous for any reason assigned.
7. Other grounds of the motion for new trial, not specifically dealt with, are without merit.
8. The verdict was supported by evidence, and the court did not err in refusing a new trial.

No. 2760. May 12, 1922.

Equitable petition. Before Judge Ellis. Fulton superior court. July 2, 1921.

James L. Ricks, a minor, filed an equitable petition by his next friend, J. B. Ricks, against the Dixie Manufacturing Company, a corporation, James I. Lowry, sheriff, and the Dixie Paper and Box Company, a corporation, alleging in substance, that the Dixie Manufacturing Company had injured and damaged the minor, who was thirteen years of age at the time of the injury, by reason of defendant's negligence in a number of respects, one ground of negligence being based on a violation of the child-labor law; that the minor was employed by the Dixie Manufacturing Company to work in its twine factory, and his particular duty was the feeding of a certain carding-machine; that while so engaged his left hand was caught in the machine and was badly mangled, so that it has been rendered practically useless and will be so for the remainder of his natural life. A suit for damages was filed against the Dixie Manufacturing Company, to the November term, 1918, of the superior court. While that suit was pending the present petition was brought against the defendants, seeking to set aside a certain mortgage that had been given by the Dixie Manufacturing Co. to the Dixie Paper & Box Co., dated April 4, 1919 in the sum of $19,912.34, which mortgage covered the entire plant and assets of the Dixie Manufacturing Co. On August 4, 1919, the Dixie Paper & Box Co. filed its affidavit to foreclose the mortgage in Fulton superior court, and a mortgage execution issued and was placed in the hands of the sheriff and by him was levied, in August, 1919, upon all of the property specified in the mortgage, and the property is being advertised for sale under the foreclosure, and the Dixie Paper & Box Co. purposes that it shall be sold on the next succeeding first Tuesday in September. It is alleged, that the execution of the mortgage and its subsequent foreclosure constituted a fraud upon the plaintiff, in that the mortgage and debt which it was given to secure are fraudulent and were executed

solely for the purpose of hindering, delaying, and defrauding the plaintiff in his lawful demands upon the said defendant on account of the damages sustained by him, as set out in the petition; that the execution of the mortgage and its foreclosure constitutes a fraud upon the rights of plaintiff, in that all of the assets of the Dixie Manufacturing Co. will thereby be disposed of, and said defendant will thereby become insolvent and be unable to respond in damages; that plaintiff is without remedy at law, and unless equity intervenes he will suffer irreparable damages. The prayer was, that the further prosecution of the mortgage foreclosure be restrained and enjoined, and that the alleged mortgage and the debt which it was executed to secure be declared null and void, and that the note be delivered up for cancellation. There was also a prayer for general relief. The defendants filed an answer, admitting some of the allegations, denying others, and for want of sufficient information neither admitting nor denying still others. Defendants specifically aver that the mortgage was executed to secure a bona fide existing indebtedness from the Dixie Manufacturing Co. to the Dixie Paper & Box Co., a large amount of which indebtedness was incurred during the year 1918. Every dollar of the indebtedness represented advancements made to the Dixie Manufacturing Co., of merchandise sold it, or bills paid for it, and on the other hand it has been credited on the books of the Dixie Paper & Box Co. for all twine sold by it to the latter company. On the trial the jury returned the following verdict: "We find the mortgage described in the petition to be fraudulent, and that it ought to be delivered up and cancelled." A motion for new trial was overruled, and the defendants excepted.

*T. B. Higdon* and *Walter S. Dillon,* for plaintiff in error.
*Hewlett & Dennis,* contra.

HILL, J. (After stating the foregoing facts.)

1. The first ground of the amended motion for new trial complains of the admission by the court, over objection, of the evidence of S. B. Wright Jr., a witness for the plaintiff, who was allowed to testify as to certain conversations between him and T. J. Monroe, president of the Dixie Manufacturing Co. and manager of the Dixie Paper & Box Co., Wright's testimony being in part as follows: "The notice given by me to the Dixie Manufacturing Co., disclaiming liability as to the Ricks's suit, was in writing.

It was in a letter to Mr. Monroe, and then we discussed it. I took the same position in our conversation, denying liability. I told him my investigation into the Ricks case indicated there had been a violation, on their part, of one of the requirements of our policy, and because of that violation we would disclaim liability for the Ricks case, and refuse to extend the protection of the policy to the Dixie Manufacturing Co., for the Ricks accident. That was August 8, 1918. About three weeks later I had a conversation with Mr. Monroe about the Ricks matter. I asked Mr. Monroe about the Ricks case, and he said they were trying to negotiate a small settlement with the father. He said that he did not feel that they were morally responsible for the injury to the Ricks boy, because the act of negligence, or the violation of the law, was permitted by an older brother of the Ricks boy, who held the position of night superintendent. In substance he expressed himself that he was willing to help Ricks pay his bills, some lost wages, and a small amount, help him financially. He said he would not recognize the claim as being one involving big damages. He said further he expected to put a mortgage on the plant, because there was some indebtedness due the Dixie Paper & Box Co. No amount was mentioned that I recollect. That is about all there was in that conversation at that time, as I recollect. Some few weeks after that I received a telephone message from Mr. Monroe, asking me to come over to his office. This conversation took place at Mr. Monroe's office on Peters street. He asked me by telephone to come over there. He did not tell me what he wanted to see me about, over the telephone, but when I got to his office I discussed the other two accidents that had occurred at the time, and which we were handling under the policy. He asked me how I was progressing toward a settlement, and what I expected to do with the other two cases; and I told him that I had offered different amounts, aggregating some $700. He then suggested that I not be in any hurry in settling them up; that he expected to put a mortgage on the Dixie Manufacturing Co., and that he would probably have to take the plant over on this mortgage; that the mortgage would be large enough to cover the value of the plant, and that I need not hurry myself about paying out any money on the other two claims. He mentioned about $20,000 as being the amount of the mortgage. I told him I would not be a party to

the mortgage; that my company made its policy absolutely good, and that I would go ahead and take care of our liability myself under those two other accidents; and I left him. At the time of my conversation with Mr. Monroe, he told me that the Dixie Manufacturing Co. was indebted in a large amount to the Dixie Paper & Box Co.; but no amount was mentioned. That was the second conversation, when we chanced to meet at the plant. He just merely remarked that the Dixie Manufacturing Co. owed the Dixie Paper & Box Co. some money, and that he was going to put a mortgage on the plant. He did not at that time make any statement that would lead me to believe that it was a fake mortgage. Later on at his office he made the statement that he was going to make the mortgage big enough to take care of the Ricks claim. He did not state how much the debt of the Dixie Manufacturing Co. was; he stated he was going to make the mortgage for $20,000; that was big enough to cover the value of the Dixie Manufacturing Co." This witness also testified that he was special agent, adjuster, and attorney for the London Guaranty and Accident Co., one of the insurance companies that carried the liability insurance for the Dixie Manufacturing Co. at the time the injury to the plaintiff occurred. He stated he was an attorney at law, and that he was at the conversation with Mr. Monroe in the capacity of an attorney. He further stated, that, in the previous hearing in this case before Judge Pendleton, he claimed exemption from testifying, and that when he came into the present hearing he supposed that his exemption from testifying still stood. He stated that both he and his company considered that it took a lawyer to do the things necessary to a settlement for personal injuries, and that there was no adjustment bureau for the adjustment of personal injury cases, and that this requires a skilled attorney. He stated that he claimed the privilege of exemption from testifying in this matter, because in his opinion the information given him by Mr. Monroe was given him solely through his connection as attorney for the London Guaranty & Accident Co., and that he represented them then and still represents them, and that there has been no actual determination of the controversy of the Dixie Manufacturing Co. and the London Guaranty & Accident Co., and that the policy of the Dixie Manufacturing Co. contains no limit as to when they may commence proceedings against the

London Guaranty & Accident Co., except ninety days after they are compelled to pay out money in the Ricks case. He read from the policy of insurance held by the Dixie Manufacturing Co. certain provisions by which the insurance company was bound to pay all costs and expenses attendant upon investigations, adjustments, and settlement of claims, and agreed to defend any claim or suit in the name or in behalf of the assured, or settle the same if deemed advisable. The witness also stated that he did not defend the Dixie Manufacturing Co. in the suit filed against it by Ricks; that he investigated, and then served notice that the insurance company disclaimed liability; that he refused to have anything further to do with the case as an attorney at law, and had nothing further to do with it afterwards; that he was a licensed attorney at the Atlanta bar; and that he appears in almost all the cases which his company defends.

There was much more of this witness's evidence set out in this ground of the motion for new trial, which we do not deem necessary to be set out in order to reach a correct conclusion as to its admissibility. Error is assigned upon the admission of this evidence, upon two grounds: (1) that it was evidence of an effort at compromise or settlement; and (2) that it was irrelevant and immaterial, as well as a privileged communication. It is stated in this ground that the witness himself claimed his exemption from testifying, on the ground that his testimony would reveal a privileged communication between himself and an officer of the Dixie Manufacturing Co., and the Dixie Paper & Box Co., as whose attorney he was acting in the matter under the terms of the insurance policy. Section 5860 of the Civil Code of 1910 is as follows: "No attorney shall be competent or compellable to testify in any court in this State, for or against his client, to any matter or thing, knowledge of which he may have acquired from his client, by virtue of his relations as attorney, or by reason of the anticipated employment of him as attorney, but shall be both competent and compellable to testify, for or against his client, as to any matter or thing, knowledge of which he may have acquired in any other manner." Did the evidence of Wright, the greater portion of which is set out above, concerning his relations with the Dixie Manufacturing Co., bring them within the purview and scope of the code section just cited? If it did, then the

evidence should have been excluded; otherwise it was properly admitted. By reference to the evidence it will be seen that the witness testified: " I told him [Monroe] my investigation into the Ricks case indicated there had been a violation, on their part, of one of the requirements of our policy, and because of that violation we would disclaim liability for the Ricks case, and refuse to extend the protection of the policy to the Dixie Manufacturing Co. for the Ricks accident." Also set out in the motion for new trial is the following: " The witness [Wright] also stated that he did not defend the Dixie Manufacturing Co. in the suit filed against it by Ricks; that he investigated, and then served notice that the insurance company disclaimed liability; that he refused to have anything further to do with the case, as an attorney at law, and had nothing to do with it afterwards." From the above evidence it will be seen that the witness, Wright, never was the attorney for the plaintiff in error, Dixie Manufacturing Co. He was attorney for the insurance company; and not only is there no evidence that he was employed to represent the plaintiff in error in defending the insurance suit, but we have his clear and unequivocal testimony that he did not represent that company as attorney, and refused to represent it. The witness, as attorney for the insurance company, notified Monroe that the insurance company was not liable under its policy for the damage which had been sustained by the defendant in error, and that it would not pay it. In these circumstances we do not see how the evidence objected to can be regarded as privileged communications between an attorney and his client. " An attorney at law is not incompetent to testify to facts which did not come to his knowledge by reason of his relation or contemplated relation of attorney and client between himself and another." *Harkless* v. *Smith,* 115 *Ga.* 350 (41 S. E. 634).

We are also of the opinion that this ground of the motion for new trial is not good, for another reason, viz., that the evidence is objected to as a whole, and this court has repeatedly ruled that where evidence is objected to in bulk, and some of it is admissible and other portions not, it is not a good ground of objection that the evidence is objected to as a whole.

2. The act of 1918 (Acts 1918, p. 136) provides that the dissolution of a corporation, either as the result of the expiration of

its charter or for any other cause, shall not bring about its total extinction, nor operate to extinguish any demand or cause of action against it in favor of any person whomsoever, whether arising from contract or tort, nor shall such dissolution work the abatement of any suit pending against it at the time of such dissolution, but all such pending suits may be prosecuted and enforced to a conclusion as though such corporation were still undissolved. The act further provides that suits for the enforcement of any demand or cause of action due by such corporation may to a like extent be instituted and enforced against it in any court having jurisdiction thereof at the time of its dissolution, etc. Therefore the trial court did not err in declining to allow movants to introduce in evidence the original order of the superior court, granted April 16, 1919, dissolving the Dixie Paper & Box Co. as a corporation, more than four months before the filing of plaintiff's suit; nor was it error to overrule a motion to nonsuit this action, and to direct a verdict in favor of the Dixie Paper & Box Co.

3. Grounds of a motion for new trial which are expressly abandoned will not be considered by this court.

4. In ground 6 of the motion for new trial complaint is made of the overruling of a motion to nonsuit the case, on the ground that plaintiff had not offered sufficient evidence to show the non-existence of the debt which the mortgage was given to secure. The defendants did not preserve their exception in the lower court to the overruling of the motion to grant the nonsuit, so far as the record shows; and therefore this ground of exception cannot be entertained by the Supreme Court in a motion for new trial. *Stewart Contracting Co.* v. *Jenkins,* 116 *Ga.* 22 (42 S. E. 382); *Central Railroad &c. Co.* v. *Denson,* 83 *Ga.* 267 (9 S. E. 788); *Augusta Railway Co.* v. *Tennant,* 98 *Ga.* 156 (26 S. E. 481); *Jones* v. *Daniel,* 106 *Ga.* 853 (33 S. E. 41).

5. However, the same question is involved in grounds 9, 10, and 11 of the motion for new trial, where the charge of the court is excepted to on the ground that there is no evidence tending to attack the bona fides of the indebtedness to secure which the mortgage was executed. It was further contended that the charges complained of authorized the jury to find the mortgage null and void and to order it delivered up and canceled, notwithstanding the fact that there might be a bona fide indebtedness due to the Dixie

Paper & Box Co. by the Dixie Manufacturing Co. These were the only assignments of error as to the charge. The court charged the jury, in part: "If you find in this case, gentlemen, that the Dixie Manufacturing Co. executed this mortgage for the purpose of hindering, delaying, or defrauding this plaintiff, and that it was insolvent at the time, and that the mortgagee had knowledge of this fraudulent purpose, if it existed, or had reasonable ground in the exercise of ordinary diligence to know of it, then it would be your duty in this case to find that this mortgage is null and void and should be delivered up and canceled. If there was a real indebtedness in the case, and the mortgage was given bona fide to secure it and taken without knowledge of any fraud, and there was no fraud in the transaction, why then the fact of disparity between the actual indebtedness and the mortgage would not of itself justify holding that the mortgage was fraudulent and should be canceled." We are of the opinion that the grounds of exception to the charge complained of are without merit. In the case of *Conley* v. *Buck,* 100 *Ga.* 187 (28 S. E. 97), the second headnote is as follows: "There was no error in the trial of such a case, while the court was submitting to the jury the question as to whether or not a given deed from the defendant in execution to his wife, she being one of the defendants to the petition, was made with intent to hinder, delay, or defraud the husband's creditors, in charging, in substance, that if the husband made the deed with such intent, and this was known to the wife, it was void as to the creditors, 'even though it may appear that she had paid a valuable consideration;' nor in charging that if in accepting such deed she did so with the intention and purpose of delaying or defrauding such creditors, the deed would be void, 'although it may have been based upon a valuable consideration.'" And see *Palmour* v. *Johnson,* 84 *Ga.* 91 (10 S. E. 500); *McDowell* v. *McMurria,* 107 *Ga.* 812 (33 S. E. 709, 73 Am. St. R. 155). It follows from the above that even though there was a bona fide indebtedness due by the Dixie Manufacturing Co. to the Dixie Paper & Box Co., as contended by the plaintiff in error, if the mortgage was made with intent to hinder, delay, or defraud the creditors of the mortgagor, such mortgage would be void. And the jury found in the present case that such was the fact, and there is evidence to support their finding.

6. It was not error, under the facts of this case, for the court to charge paragraph 1 of § 3224 of the Civil Code of 1910, which is as follows: "Every assignment or transfer by a debtor, insolvent at the time, of real or personal property, or choses in action of any description, to any person, either in trust or for the benefit of or in behalf of creditors, where any trust or benefit is reserved to the assignor or any person for him." The exception to this charge was that there was no evidence to indicate that there was a trust or benefit reserved in the mortgagor, or any person for him. It will be observed that the language of the code section charged is in the alternative, viz., "any trust or benefit is re-. served," etc. We are of the opinion that there is evidence from which the jury might infer that a benefit was reserved to the mortgagor; and therefore the court did not err in giving the charge complained of.

The court also charged the jury as follows: "If you find in this case, gentlemen, that the Dixie Manufacturing Co. executed this mortgage for ,the purpose of hindering, delaying, or defrauding this plaintiff, and that it was insolvent at the time, and that the mortgagee had knowledge of this fraudulent purpose, if it existed, or had reasonable ground in the exercise of ordinary diligence to know of it, then it would be your duty in this case to find that this mortgage is null and void and should be delivered up and canceled." This charge is not erroneous for the reasons urged, that it does not correctly embody the law as applied to the case at bar, in that a mortgage may be given which does hinder and delay, and yet be legal, provided the debt is a bona fide one; and it is insisted that the instruction should have been qualified in such way, and it is further insisted that the instruction did not take into consideration the fact that counsel had expressly waived any attack on the existence of the indebtedness.

7. The court did not err in admitting certain evidence set out in grounds 7 and 8 of the motion for new trial, over the objection that there was higher evidence of the fact.

8. The verdict was supported by evidence, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*

BECK, P. J., and GILBERT, J., concur specially.