73452. KESLER et al. v. VEAL et al.
(356 SE2d 254)

BIRDSONG, Chief Judge.

The appellants here are brothers, Jimmy and H. V. Kesler, against whom a jury verdict was rendered for the setting aside of a deed, $5,000 actual damages against both and $65,000 against each in punitive damages, all for fraudulent conveyance of property under OCGA § 18-2-22. Four days after Jimmy Kesler was convicted of the murder of Jan Veal Evans, he conveyed certain real property to his brother H. V. Kesler. Mrs. Evans' minor children subsequently filed a wrongful death action against Jimmy Kesler and, before this case was tried, received a verdict of $550,000 in that lawsuit.

On appeal, appellants do not complain of the verdict setting aside the deed, but contend the law does not allow money damages in such an action. *Held*:

1. Appellants contend that evidence that H. V. had advanced $40,000 to Jimmy for attorney fees in his murder trial proved a "valuable consideration" under *Brown v. C & S Bank*, 253 Ga. 119 (317 SE2d 180), and therefore the conveyance could not be found fraudu-

lent. However, what *Brown* said was that the defraudee, C & S Bank, was not entitled under § 18-2-22 (3) to a *directed verdict* on liability because a jury could find Mr. Brown's conveyance to his wife was based on valuable consideration. The verdict in this case is sustained under § 18-2-22 (2), which makes a bona fide transaction on a valuable consideration valid, *if* "the taking party is without notice or ground for reasonable suspicion of said intent of the debtor [to delay or defraud creditors]." Manifestly, notwithstanding evidence of valuable consideration, if the jury finds that the debtor made the conveyance with the intention to delay and defraud creditors, and the taking party has notice or even *ground for reasonable suspicion* of the debtor's intent, the act is fraudulent in law.

The fraud proscribed in § 18-2-22 (2) is purely in the intention, which is a question of fact for the jury. The degree of legislative opprobrium expressed in this paragraph is clear recognition that a fraudulent conveyance is most easily accomplished when it appears to be otherwise, and that the statute means to reach the fraudulent intent regardless of appearances. It has long been the law that the presence of a bona fide consideration or indebtedness does not render the conveyance valid. *Dixie Mfg. Co. v. Ricks*, 153 Ga. 364 (5), 371-372 (112 SE 370). Evidently the jury concluded that not only did Jimmy Kesler transfer his property to H. V. "with intention to delay and defraud creditors," but that "such intention [was] known to the taking party." And the jury, being well and truly charged on the matter, evidently concluded that H. V. had notice of Jimmy's fraudulent intent or ground to reasonably suspect it. We are not at liberty to disregard this finding of fact merely because there was the appearance of propriety, because this is the very thing the statute attempts to pierce in finding the intent.

2. Jimmy and H. V. Kesler contend, as they did below, that no authority exists allowing damages, much less punitive damages, for a conveyance with intent to avoid creditors under OCGA § 18-2-22. They advance *Bacote v. Wyckoff*, 251 Ga. 862 (310 SE2d 520) as meaning that there is no fraud and money damages cannot be collected in a suit to cancel a deed, unless there were actual fraudulent misrepresentations; and *Brown v. C & S Bank*, supra, as meaning damages are not recoverable in a wrongful conveyance case unless a "conspiracy" is involved.

Appellants' reliance on these cases is misplaced. *Bacote*, supra, did not involve a conveyance to delay or defraud creditors and was not a suit on a fraudulent conveyance under OCGA § 18-2-22. The petition alleged a conspiracy to defraud between Bacote and the plaintiff's former husband, who conveyed plaintiff's property to Bacote. The Supreme Court upheld the voidance of the deed but reversed the award of money damages against Bacote, as there was no

evidence Bacote had committed fraud because he made no "representations" to the plaintiff and there was no "reliance." *Bacote* involved actual fraud, and not being a § 18-2-22 fraudulent conveyance case, it does not stand to mean that actual representations by the transferee and reliance by the defrauded party are required in a suit under OCGA § 18-2-22. Appellants contend that *Plough Broadcasting Co. v. Dobbs*, 163 Ga. App. 264 (293 SE2d 526) required the trial court to give a jury charge on actual fraud, but that case had to do with actual fraud committed in a fish-catching contest and thus is inapposite to this case. The trial court would have erred if it had charged the jury in this case that actual "misrepresentation" must be proved in a fraudulent conveyance case, since OCGA § 18-2-22 does not require it, but rather makes the described acts fraudulent-in-law.

The fact that the plaintiffs in *Brown v. C & S Nat. Bank*, supra, alleged a conspiracy to accomplish a fraudulent conveyance patently does not mean damages can be recovered for fraudulent conveyance only where a jury finds a conspiracy. The acts described by OCGA § 18-2-22 (2) are the acts and intentions of both the grantor and grantee, a conspiracy of sorts in the inception. They constitute acts "fraudulent in law" and that is all that is required to render a conveyance fraudulent under the statute.

The dissent proffers that transferees cannot be liable in suit brought on fraudulent conveyances. OCGA § 18-2-22 (2) states that if the transferee takes the property on a bona fide transaction on a valuable consideration "without notice or ground for reasonable suspicion of said intent of the debtor [to delay or defraud creditors the deed] shall be valid." There would not and could not be a cause of action against the transferee in such an instance; however, in the case sub judice the jury found fraud on the part of both the transferor and transferee and set aside the deed. Are we to conclude that when two parties act to perpetuate a fraud-in-law *according to the terms of the statute*, only one of the two parties can be sued for the fraud? We think not and hope not; and the statute does not say so nor does it imply that the fraudulent *act of the transferee which renders the act of the debtor fraudulent in law* is not actionable against the transferee. Logic forbids such a result, for if the act of the transferee in taking with knowledge of or ground for reasonable suspicion of debtor's fraudulent intent is not fraudulent, then the conveyance is not fraudulent under the terms of the act itself, and the debtor is not liable either.

3. The contention is made generally that a fraudulent conveyance action under OCGA § 18-2-22 will not support damages, and that the only remedy allowed is the setting aside.

The precedent in this area is scarce and very uneven, but it indicates the critical distinction between a suit in equity to set aside the

conveyance based on the original debt, and an action at law for the fraud itself. OCGA § 18-2-22 makes the acts "fraudulent in law"; fraud is a tortious injury. Damages are given as compensation for tortious injury (OCGA §§ 51-6-1; 51-12-4) and are presumed to flow from a tortious act. OCGA § 51-2-2. There is no statutory hint that the fraud found under OCGA § 18-2-22 will not support damages. To the contrary, it seems to us that in specifying what acts and intentions *"shall be fraudulent in law* against creditors and others *and* as to them shall be *null and void,"* the legislature has expressed a degree of opprobrium not common in law and has stated far more than it would have in a provision merely that certain acts shall be null and void. It has made fraud-in-law what the plaintiff would have much difficulty in proving as a subtle form of constructive fraud. Moreover, if it had meant to apply to such specific acts only an equitable remedy of setting aside the conveyance so as to satisfy the debt, the legislature had only to say: "These acts shall be null and void"; and certainly most debtors would then be well advised to convey whatever they could, since the described acts, should they ever be proved, could subject them to no penalty at all. In going to the length to specify that these acts are *fraud-in-law,* the legislature did create a tort and particularly in view of the uncommonality of making such subtle intentions "fraudulent in law," we are hard put to say it constitutes no injury or that there is no cause of action for it and no redress *for the injury itself.* Clearly the legislature found this injury more odious than a mere avoidance of debt which the setting aside will put right. In *Brown v. C & S Nat. Bank,* supra, the Supreme Court sanctioned an award of actual damages and punitive damages, even though the conveyance of a motor vehicle was never effected, on the basis that the Browns' attempted conveyance caused real injury, creating at minimum a cloud on the title and forcing the bank to take affirmative action. In that case there was nothing to set aside on behalf of the debt, but clearly the Supreme Court found an injury.

In *Chambers v. C & S Nat. Bank,* 242 Ga. 498 (3) (249 SE2d 214), the suit was brought to declare the conveyance void. No damages were sought except attorney fees, and these the court approved on grounds the appellants had acted in bad faith. A similar holding was made in *Jones v. Spindel,* 239 Ga. 68, 71-72 (235 SE2d 486), where it was also held that there was nothing to support punitive damages because the plaintiff had not claimed any compensatory damages but had only prayed for equitable relief by the setting aside of the conveyance. Thus the suit in *Jones* was not a suit for the fraud itself.

*Jones v. Spindel* (p. 71) stated that *Foremost Dairy Prods. v. Sawyer,* 185 Ga. 702 (196 SE 436) held "that one can not set aside a fraudulent conveyance *and* win money damages from the grantee as

that would be a double recovery." This is a correct statement of law, but it does not say one cannot set aside the conveyance and win money damages *for the tort of fraud*. The Supreme Court is referring to the double recovery *on the original debt* that would result if equity both set aside the conveyance and gave a money judgment *in satisfaction of the debt*. In *Foremost Dairy Prods.*, the judgment creditor, Sawyer, alleged at length that the "old" Foremost Dairy Products, Inc. had conveyed to the "new" company Foremost Dairies, Inc. all its shares and property for the purpose of defrauding and defeating creditors. The petitioner prayed to make the property of the new company subject to his claim and, by amendments, he alleged (p. 710) specific fraud of the new company but *he did not ask for damages for the fraud*. He prayed for a judgment against the new company in the amount of his original debt judgment, thus to make the property wrongly conveyed to the new company subject to his claim. Id. pp. 703-704, 710. The Supreme Court struck the "personam judgment" award (pp. 716, 720), and held erroneous and misleading the jury charge: " 'The purpose of this action . . . is that the plaintiff may recover of and from the defendants a sum of money. . . .' " Id. pp. 717-718. In fact, this was a petition in equity to set aside the conveyance or subject the property to Sawyer's lien; it was not a suit for damages for the fraudulent conveyance and thus no "personal judgment" for damages could be awarded *for the fraud*. The trial court set aside the conveyance and rendered a judgment in rem against the property; this was all the court could do on the equitable petition. The personal judgment on the debt was not authorized, because it was unnecessary and hence was a relief beyond the power of equity to satisfy the debt by cancelling the conveyance and subjecting the property to Sawyer's lien by judgment in rem. See *Miller v. Kaiser*, 164 Colo. 206 (433 P2d 772).

    *Foremost Dairy Prods.* and all of the cases on this subject must be seen in light of this critical distinction between *an equity action seeking to satisfy the underlying debt* by setting aside the conveyance or pursuing its proceeds, and *an action at law for damages for the fraud*. These are two distinct and separate wrongs. The equitable remedy of setting the conveyance aside may authorize damages based *on the debt*, but only to the extent the property has been disposed of or dissipated and the conveyance cannot be effectively set aside. See *Jones v. Spindel*, supra; *Sullivan v. Ginsberg*, 180 Ga. 840 (181 SE 163); *Miller v. Kaiser*, supra. But this has nothing to do, except in the way of proof and circumstance, with an action for damages *for the fraud*.

    In *Graves v. Horton*, 132 Ga. 786 (65 SE 112), the plaintiff sought to make the transferee pay a debt owed him by the bankrupt debtor. The plaintiff had no judgment and no lien; it was not a proceeding to

subject the property to the payment of a debt, but "was a direct suit, by one claiming to be a creditor of a bankrupt." Id. p. 789. The court found itself confounded to detect what the plaintiff wanted of the transferee that he had any right to get. The facts are too sparse to indicate whether the plaintiff sued in equity on the underlying debt or at law for damages for the fraud, but the court was convinced he had no case for either *because he had no judgment and no lien* to which to hold the property or its proceeds. But this was based on the assumption that the plaintiff was no real creditor because he had no judgment or lien, and thus no equity to set the conveyance aside; and the court reasoned further, since the result of the transfer was the loss of a mere possibility of realization too speculative to be measured in damages, there was no fraud, for how could it be a wrong to avoid one who was not even a creditor? See Glenn, Fraudulent Conveyances & Preferences, § 74, pp. 122-123 (1940). But this is clearly not the rule in Georgia, which holds to the opposite rule (see Moore, Fraudulent Conveyances, Chap. XII, § 21, p. 757 (1908)), and expressly declares in OCGA § 18-2-22 that the certain acts "shall be fraudulent in law against creditors *and others* and as to them shall be null and void." These "others" include plaintiffs with claims against debtors "liable as tortfeasors, or otherwise . . . for an unascertained damage to person or property, so far as fraudulent conveyances are concerned." *Westmoreland v. Powell*, 59 Ga. 256, 258. In 1895, the legislature put back in the statute the words declaring certain acts to be fraudulent in law against creditors "*and others*" (Civil Code § 2695) using as its source *Westmoreland*. Thus the perception implied in *Graves v. Horton*, supra, that there can be no action either in equity to set aside a conveyance or at law for damages for the fraud in one who has only an uncertain claim, cannot be sustained, and indeed has not been repeated. See *Banks v. McCandless*, 119 Ga. 793 (47 SE 332).

*Matthews v. Pass*, 19 Ga. 141, is cited by the dissent for the proposition that historically there never has been an action at law for damages *for the fraud*, but examination of that case reveals that the action against that transferee was not pursued under the fraudulent conveyance statute, but was an action for actual fraud in aiding a debtor to remove property; and was by a plaintiff creditor who *had no lien* and no judgment and therefore *had no right to the property*. The premise of the case is like that in *Graves v. Horton*, and surmises that the creditor was not wronged by the transferee because he was in fact not a creditor, and *that* is why he had no action for fraud. *Matthews v. Pass* was decided well before *Westmoreland v. Powell*, supra, which established, beyond debate (particularly since the legislature then adopted the rationale in the statute), that the fraudulent conveyance statute protects creditors "*and others*," meaning plaintiffs

with an undetermined claim. It thus might have been true in 1858 when *Matthews v. Pass* was written, that the "creditor" without a lien or judgment was not injured by the transferee *or a debtor*; but it is not true since *Westmoreland,* and under today's statute he is protected from the fraud of the debtor and the transferee.

*Bigby v. Warnock,* 115 Ga. 385 (41 SE 622) was not an action for damages for fraud. It was a petition in equity to set aside the conveyance or to subject the grantee's proceeds to Warnock's lien. Thus, in that case the equitable action, the remedy and the recovery were on *the original debt*; the thing the creditor wanted was the satisfaction of his lien. All of the limitations stated in *Bigby* are to that end.

The Colorado case cited in *Jones v. Spindel,* supra, p. 71, proves this critical distinction between an action for damages for the fraud, and an action "seeking and securing *the equitable remedy* of voiding [the] fraudulent conveyances." *Miller v. Kaiser,* supra, p. 775. The Colorado court held that a personal judgment and punitive damages *on the debt* are incompatible with that equitable action because "[i]mplicit in this remedy is a bar to any money judgment against the fraudulent transferor. . . . [In] this equitable remedy . . . a judgment creditor cannot . . . be the recipient, as against the fraudulent transferor, of a money judgment, for the very basis of this action is *the judgment debt he is endeavoring to collect. . . .* To award the judgment creditor a money judgment would amount to an increase in the judgment debt owed to the judgment creditor by the fraudulent transferor. . . . *[But] a different situation might be presented in an action in which special damages were alleged and proved*" (id., emphasis supplied); that is to say, in an action for the fraud itself. This statement from *Miller* explains the striking of the judgment in personam in *Foremost Dairy Prods.,* which also was not an action for damages for the fraud, and the statement in *Jones v. Spindel* that "one cannot set aside a fraudulent conveyance *and* win money damages from the grantee as that would be a double recovery" *on the debt.*

Nearly all of the cases and authority which have asseverated that damages cannot be recovered in these cases refer to the action for *equitable relief on behalf of the original debt*; we certainly agree that damages are not recoverable in such a proceeding unless they are necessary in equity to *answer to the debt.* But the acts of fraud are a different matter entirely, and to say there is no remedy for *them* is to deny that the creditor was even wounded by the fraudulent conveyance.

We conclude that the remedy of setting aside the conveyance or (if the property has been put out of reach of the creditor) damages to aid equity not exceeding the debt or the value of the property, is *the equitable remedy on the debt* which the grantor and grantee sought

to avoid by the fraudulent conveyance as set up by OCGA § 18-2-22. *Jones v. Spindel*, supra. The creditor reaches the property by proving the fraudulent conveyance. But the *fraud itself* might constitute a tortious injury so clearly that it might be proven even where the creditor succeeded in preventing the conveyance, and will support actual damages and exemplary damages. *Brown v. C & S Bank*, supra; see *Sheppard v. Tribble Heating &c.*, 163 Ga. App. 732, 734 (3) (294 SE2d 572).

We find this result to be mandated by the statute itself and every consideration of public policy. To say the only remedy of the creditor is in equity to set aside the conveyance would be to urge the debtor to convey his property away to hinder and defraud creditors, for if he should get caught at it, no matter how fraudulent his intent or how odious the injury, the worst that could happen would be the setting aside of the conveyance and, even if the asset is destroyed or moved out of reach, equity would aid the creditor in damages only to the extent of the debt. We think this defect in equity jurisdiction *requires* a remedy at law for damages for the fraud itself (see Moore, Fraudulent Conveyance, supra); it is indispensable to effect the legislative aversion to such a conveyance, which is so strong it declared the acts to be "fraudulent in law."

Accordingly, this money judgment for damages at law for the fraud is not subject to attack for any of the reasons suggested by the appellants. Clearly, the jury found that the appellees were damaged by the fraudulent transfer (see *Baggett v. Nat. Bank &c. Co.*, 174 Ga. App. 346, 349-350 (330 SE2d 108)), and evidently found such "aggravating circumstances, in either the act or intention," as to justify punitive damages under OCGA § 51-12-5, as well. We are not authorized to disturb the jury's findings of fact.

4. As we took pains to show in Division 3, the equitable remedy of setting aside the conveyance for satisfaction of the *original debt* is completely different from the right at law to recover damages *for the fraud of the conveyance itself*. The setting aside and the recovery of damages for the fraud are not "two bites of the apple" or "paying the debt twice." *Equity pays the debt* by setting aside the conveyance; but the law compensates the creditor in damages for the tort of fraud. The statement in *Brown v. C & S Bank* that the plaintiff bank voluntarily "elected" to recover damages for the fraud does not amount to a holding that it was required to make an election; and in fact, since there was nothing to set aside because the bank had prevented the transfer, there was really nothing to elect.

The statute not only does not imply there must be an "election," but it mandates the conclusion that the creditor may recover for the fraud and set aside the conveyance, for it expressly provides that the described acts "shall be fraudulent in law . . . *and* . . . shall be null

and void."

We conclude the petitioners are not required to give up their right to satisfy the judgment debt by getting the conveyance set aside, in order to get damages for the fraud. To hold otherwise would be to facilitate a fraudulent conveyance by encouraging a debtor to remove the property, for he would know that even if he gets caught in the fraud he will not be penalized for it but can force the creditor to choose between setting aside the conveyance to satisfy the debt and recovering damages for the fraud. In such a case the requirement to elect would compound the injury to the creditor, because if he gives up the setting aside to recover damages for the fraud, that judgment debt will likely have been avoided as well by the conveyance. He will thus be unable to satisfy his original debt, unable to satisfy his fraud judgment, and the debtor will suffer no penalty at all.

5. The jury returned a first verdict of $65,000 general damages against both appellants, and $5,000 punitive (exemplary) damages against H. V. Kesler and $145,000 against Jimmy Kesler. The trial court refused to approve this verdict because the general damages award exceeded the $5,000 general damages prayed for. When the jury retired with instructions to adjust the general damages award, it adjusted the punitive damages as well to $65,500 but without specifying against whom this amount was assessed. Again, the judge refused to approve the verdict, but he accepted the third verdict of $5,000 general damages against both defendants, and punitive (exemplary) damages of $65,500 against each. Appellants contend this third verdict assessed, over the second verdict, an excess amount of $65,500 in punitives against H. V., which was contrary to the court's instructions to adjust the general damages. There is no merit in this contention. Neither the first nor the second verdict was approved by the court and neither was the verdict of the jury until it was accepted and approved. Davis & Shulman, Ga. Prac. & Proc., § 16-8. The trial court has the right and duty to have the jury mold the verdict in proper form, to require the adjustment of damages to what the plaintiff sued for or is entitled to (*Chieffe v. Alcoa Bldg. Prods.*, 168 Ga. App. 384 (4) (309 SE2d 167)), or to call the jury's attention to an indefinite or ambiguous verdict and require them to retire and correct the same. *Smith v. Pilcher*, 130 Ga. 350 (60 SE 1000). The second verdict in this case ($65,500 exemplary damages) was no more the "final verdict" of the jury than the first one and no verdict was final until the trial court approved and accepted it. Until then, when the jury was instructed to remold the general damages, it was free to remold the rest of the verdict to reflect its determination of total liability.

6. The verdict in this case is not subject to attack on grounds that it constituted a double recovery for injury to feelings or of punitive damages under *Westview Cemetery v. Blanchard*, 234 Ga. 540

(216 SE2d 776) or that the trial court failed to give proper charges as to compensatory and "punitive" damages.

It is suggested that the only injury for which damages were prayed was injury to the plaintiff's peace, happiness or feelings, and that therefore the compensatory award was given under OCGA § 51-12-6 and, with punitive damages under OCGA § 51-12-5, this constituted an impermissible double recovery under *Westview Cemetery*, supra. However, assuming arguendo that the only compensable injury alleged and found was to the plaintiffs' feelings, it is well-established that compensatory damages are recoverable for injury to feelings under OCGA § 51-12-4 (which the trial court charged) if the conduct complained of was malicious, wilful or wanton, as in this case (*Westview Cemetery*, supra, pp. 543-544); and this is true even though the injury is not accompanied by physical or pecuniary loss and even though the tort be in relation to property rights. Id.; *Montega Corp. v. Hazelrigs*, 229 Ga. 126 (189 SE2d 421).

The trouble with a "double recovery" arises when the jury is allowed to award additional (punitive) damages for aggravation under OCGA § 51-12-5 *and* to consider the worldly circumstances of the parties for an award under OCGA § 51-12-6, which is also a form of punitive damages. *Westview Cemetery*, supra. No such charge was made in this case, and no such award. The only form of "punitive" or additional damages the jury was allowed to return was charged under OCGA § 51-12-5.

Thus the compensatory award of $5,000 was authorized under OCGA § 51-12-4 for injury to wounded feelings in a willful and wanton tort, without any pecuniary or physical injury. And the punitive damages were authorized under OCGA § 51-12-5 by the "aggravating circumstances in either the act or the intention" which the jury evidently found. There was no "double recovery."

*Judgment affirmed. McMurray, P. J., and Pope, J., concur. Deen, P. J., and Beasley, J., concur in judgment only. Banke, P. J., Carley, Sognier, and Benham, JJ., dissent.*

SOGNIER, Judge, dissenting.

I respectfully dissent.

1. OCGA § 18-2-22 provides: "The following acts by debtors shall be fraudulent in law against creditors and others and as to them shall be null and void." A judgment creditor can proceed either at law, by levying an execution on the property as though the title was not clouded by the fraudulent conveyance, see *Varn Investment Co. v. Bankers' Trust Co.*, 165 Ga. 694 (141 SE 900) (1928), or in equity to set aside the conveyance. See 8 EGL Debtor & Creditor, § 20 (1978 Rev.). The courts have recognized that in order to prevent equity from being outwitted or frustrated, money damages may be allowed

under certain circumstances, such as where the fraudulently transferred property has depreciated in value or where the property has been placed, in whole or in part, beyond the reach of the court. In such a case an election must be made between these two remedies in order to prevent double recovery. See *Foremost Dairy Prods. v. Sawyer*, 185 Ga. 702 (196 SE 436) (1938).

In the case sub judice, however, the damages the majority would uphold were not awarded as an alternative to the equitable remedy and have no relation to the value of the property or the amount of the creditors' debt. Rather the damages were awarded simply for the fact a fraudulent conveyance took place. Thus, the majority finds that OCGA § 18-2-22 provides not only an equitable remedy, which either restores ownership in the fraudulent transferor or makes available the monetary equivalent of the property transferred (thereby allowing the judgment creditor to reach the asset and collect his debt), but also finds that OCGA § 18-2-22 provides a remedy independent of the creditor's debt for the fraudulent transfer of the property, which authorizes actual and punitive damages against both the fraudulent transferor and fraudulent transferee.

This remedy for damages for the fraudulent transfer itself, as opposed to damages elected because the equitable remedy was inadequate, has never been recognized by the courts of this state since the virtually unchanged language of OCGA § 18-2-22 was first enacted in 1863. See Code 1863, § 1954. Nor is this remedy inherent in fraudulent conveyance statutes. See 37 CJS, Fraudulent Conveyances, §§ 279 (b) (1), 318, 444; *Miller v. Kaiser*, 164 Colo. 206 (433 P2d 772) (1967), cited with approval in *Jones v. Spindel*, 239 Ga. 68, 71 (3) (235 SE2d 486) (1977). Rather, these damages are typically sought in concert with allegations of conspiracy, *Brown v. C & S Nat. Bank*, 253 Ga. 119, 120 (317 SE2d 180) (1984), or bad faith, *Chambers v. C & S Nat. Bank*, 242 Ga. 498 (3) (249 SE2d 214) (1978), or actual fraud. See generally *Bacote v. Wyckoff*, 251 Ga. 862, 865 (1) (310 SE2d 520) (1984). In their amended complaint, appellees alleged damages for injury to their peace, happiness and feelings under OCGA § 51-12-6 and damages for appellants' bad faith and fraud. No charge was given the jury on the bad faith and fraud or on any conspiracy issue which may have been raised by the evidence. Thus only OCGA § 51-12-6, alleged by appellees, supported by the evidence, and charged by the trial court, supports the actual damages awarded by the jury. But see *Jones*, supra, at 71-72. However, actual damages awarded solely under OCGA § 51-12-6 will not support an award of exemplary damages under OCGA § 51-12-5, see *Westview Cemetery v. Blanchard*, 234 Ga. 540, 543 (B) (216 SE2d 776) (1975), and thus the award of $65,000 exemplary damages against each appellant must be stricken.

2. Even assuming, for the sake of argument, that the statute does support the award of actual and exemplary damages for fraudulent conveyance as to the transferor, the statute cannot be read as extending liability for these damages to the transferee of the fraudulent conveyance. The language of the statute explicitly states that it is the "acts *by debtors*" that shall be fraudulent at law. Transferees are mentioned only in that their knowledge of a solvent debtor's intent to delay or defraud a creditor must be proven in order to make an "act by debtors" fraudulent in law under OCGA § 18-2-22 (2).

In conclusion, the majority's holding is not explicitly authorized by OCGA § 18-2-22, nor are there any cases in the 124-year history of this statutory language to support that holding. The few cases which do discuss fraudulent conveyances and damages are distinguished by the majority on the basis that they did not involve "suits on the fraud": an unsurprising conclusion if viewed from the perspective that no such suit exists within the purview of the statute. The significance of the absence of any precedent was noted by Justice Benning in *Matthews v. Pass*, 19 Ga. 141, 144 (1855), who, in addressing a similar argument raised by a creditor seeking damages against a fraudulent transferee, stated, "[c]ases like this have been continually occurring ever since the birth of credit. Has there ever been a time when men were not aiding debtors to evade the payment of their debts? Yet, there is not to be found an instance of an action on the case against such men, by the creditor. If the law had been such as to give the creditor that action, should we not, at some time, have seen the creditor resorting to the action? Cases may be of such a character, that if they are without the support of a precedent, it may be almost certainly said, that it is because they are without the support of law. And this is one of them."

Therefore, I would dissent from the decision of the majority upholding the award of actual and exemplary damages under OCGA § 18-2-22 as to both appellants and would affirm only the award of $5,000 actual damages under OCGA § 51-12-6, striking the exemplary damages of $65,000 against both transferor and transferee appellants.

I am authorized to state that Presiding Judge Banke, Judge Carley and Judge Benham join in this dissent.

CARLEY, Judge, dissenting.

I join Judge Sognier's dissent in all that is said therein except that I do not believe that, within the parameters of this litigation, there exists a tort for which any money damages are recoverable. See *Jones v. Spindel*, 239 Ga. 68, 71 (3) (235 SE2d 486) (1977). I would reverse in its entirety the judgment for money damages entered on the verdict.

DECIDED MARCH 20, 1987 —
REHEARING DENIED APRIL 1, 1987 —

*Edward E. Strain III, Andrew J. Hill, Jr.*, for appellants.
*A. Jack Kemp II*, for appellees.