LEE L. JAMES, plaintiff in error, *vs.* EDWARD R. ELLIOTT, defendant in error.

1. When, upon the trial of a bill filed to restrain the collection of notes given for the purchase-money of land, both cases, the common law suit and bill being filed together, it was charged that, by the misrepresentation and fraud of the vendor as to the boundary of the land, the vendee made the purchase, and by such fraud he had been mismisled into expenses in preparation so far as making brick, for which purpose he bought the land, and which was known to the vendor at the time of the sale, and the Court rejected the evidence offered by the complainant, the vendee, to show his damages resulting from the alleged fraud, and also as to the quality of the land:

*Held,* That this ruling by the Court was error. Under our law, fraud with injury gives a right of action—Code, 2906, 2907—and he may recover the damages, whatever the jury may allow in an action against him for the purchase-money, the rule of estimating damages being confined to his actual damage which he has suffered by the fraud of the party, the fact of fraud being for the jury to determine.

2. *Held again,* That it was error to rule out evidence of the deficiency of the quantity of the land. Under section 2600 of the Code apportionment of the price as well when the purchase has been by *lot* as per acre may be had when deception or mistake amounting to fraud is proven, which is for the jury and not the Court to determine.

3. Under our opinion we hold that the whole case, with the evidence of-fered, ought to have been submitted to the jury, and let them weigh it under the legal rules governing evidence.

Misrepresentation.    Fraud.    Damages.    Recoupment. Before Judge Hopkins.    Fulton Superior Court.    October Term, 1870.

Elliott sued James for the unpaid part of the purchase-money of certain land which he had sold to James.    James' defense was that he told Elliott that he was buying said land solely to make brick, and for that purpose wanted a strip of clay land which Elliott said was part of the lot, and so believ-ing, he took a bond for titles to the lot, went upon it, spent over $800 00 in hiring hands, etc., in preparing to make brick, and then found out that said strip of land was not a part of Elliott's land, and it was the only part fit for brick making, and immediately abandoned the premises, and of-fered to rescind the trade, but Elliott would not.    All this he proved, and asked to recoup from his notes the amount so expended by him.    He also offered evidence of a deficiency of land from the quantity represented.    Elliott testified, denying the material parts of the defense *toto coelo*.

The Court ruled out all the evidence of the damages sus-tained by James in his preperation to make brick as well as evidence 'relating to the deficiency in the quantity of the land, and ruled that James was not entitled to any abatement or deduction from the notes in consequence of said expendi-tures.    The jury found for Elliott for the full amount of the notes.    Said rulings are assigned as error.

Robert Baugh, for plaintiff in error, cited 1 McCord's R., 121 ; 3 Law Times, 61 ; 6 John R., 181 ; 2 Wend. R., 385 ; 18 John R., 403 ; 2 Head R., 445 ; 8 Allen's R., 560 ; 19 Iowa R., 162 ; Sedg. on Dam., 51, 8, 9, 559 ; R. Code, secs. 2906, 2907.

L. J. Glenn & Son, for defendant.

James *vs.* Elliot.

LOCHRANE, Chief Justice.

Upon the trial of this case, the suit at common law and the bill in equity were tried together. It appeared that Lee L. James purchased from E. R. Elliot a city lot of four acres, in the city of Atlanta, paying a part cash and giving his notes for the balance. The suit at common law was instituted by Elliot against James for the balance of the purchase-money, and James filed his bill in which he alleges that he desired to purchase the lot for the purpose of establishing a brick yard, and that Elliot knew his intention in the premises. He charges that Elliot misrepresented the boundaries of the lot, representing a ridge upon the eastern side to be the boundary, which was nearly the whole of the lot, suited for making brick; that relying upon the boundaries as represented, he purchased the lot and took a bond for titles thereto. He further charges that his sole object in making the purchase was to establish a brick yard, and that he so informed him; that after the purchase, he employed hands, put up two small houses and a stable on the lot, and made other preparations for making brick; that he had two wagons and mules, etc., and, when he commenced levelling the lot and digging up the soil, he was informed the soil did not belong to, and was not embraced in the boundaries. He charges that he immediately notified Elliot that he had been deceived, etc., and was forced to abandon, etc. He charges that he was damaged by the deception practiced on him, $1,286 43. He prays an injunction restraining the suit; that the trade be rescinded, his notes delivered to him, and his cash payment refunded, with interest, and that he be decreed such damages as he may have sustained by the fraud practiced upon him, offering to deliver the bond to be canceled.

The defendant answered the bill, denying the charges made of the purposes of his purchase, and all fraud in the premises. Evidence was introduced on both sides, and the

jury found for the plaintiff the amount of the notes. The Court below ruled out all the evidence of damages sustained by James in his preparations to make brick, as well as the evidence relating to the deficiency in the quantity of the land, and stated that James was not entitled to any abatement or deduction from the notes, in consequence of the expenses he had been at, or the damages he had sustained by Elliot, or the want of quantity under the evidence. Which ruling of the Court was excepted to and forms the ground of error assigned.

1. The question presented by the record is a purely legal one. Is a party entitled to set up damages by way of recoupment for fraud practiced upon him in the purchase of property? The law recognizes the right of the party to an action for damages for injury resulting to him from fraud. This right is settled by the Code, section 2906. And section 2907 declares "willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury will give a right of action;" "fraudulent or reckless representation of a fact as true, which the party may not know to be false, if intended to deceive, is equivalent to a falsehood." Thus the right of action is declared by our law. If the party has the right of action he may recoup the damages in an action against him for the purchase-money: Houston *vs.* Young, 7 Indiana, 200, and Lamerson *vs.* Marvin, 8 Barbour, S. C. Reports, 9. And the rule of damages recoverable must be compensatory, or for actual damages sustained, and not remote, speculative or vindictive. Perhaps no doctrine is more complicated in the variety of cases found in the books than the subject of damages. We will notice one case within the analogies to this transaction. In Reynolds *vs.* Cox, 11 Indiana, 262, the measure for damages for misrepresenting the location of a mill and privileges, and land described in a deed, the vendor electing to keep what did pass, is what it would cost to get the land falsely represented to be covered by the deed." The ordinary rule of estimation is the difference between the value as it is, and as it would

James *vs.* Elliot.

be, as represented, at the time of the purchase: 43 N. H., 363; 12 Rich. law, S. C., 138. A great many cases may be found where damages may be set-off to a suit for the purchase-money. When there has been breach of warranty, but few cases where the rule of estimating unliquidated damages arising from fraud in the representation, out of which the party has been put to expense, are laid down by any standard writer. The principle we deduce from the authorities is, that when, by the fraud of a vendor, the vendee has been led into expenses, he may recover compensation in damages for the actual injury he has sustained.

2. To illustrate by the case at bar: If James had purchased this lot from Elliot, and the jury believed, from the evidence, there was no fraud in representing the boundaries of the lot to him, and the land was less than sold, in quantity, (and within the section 2600 of the Code, as to the apportionment of price,) then the jury would find, by apportionment, for the deficiency, as against the notes sued for the purchase-money. But if the jury believed that Elliot did know the purpose of the purchase was to establish a brick-yard, and misrepresented the boundary of the lot, fraudulently deceiving James as to the land sold, enhancing the part valuable for brick making, and acting upon such fraudulent representations James bought, and was put to expense in fitting up and preparing for the business, then the damage which James received by the fraud of Elliot would embrace and be measured by a different rule. And the jury ought, under such facts, if proved to them satisfactorily under the rules of law, have found for James the actual cost of the injury thus sustained by him. This question was adjudicated in New York as stated by Sedgwick on Damages, page 560. It was held that under misrepresentations as to the land being suitable for building lots, etc., the vendee could recoup the damages which he had actually sustained by the fraud. Sedgwick lays it down as impossible to fix any general rule, and we concur in the proposition so far as to erect any stand-

ard by which the damages must be estimated. But we think the general rule may be stated that where fraud upon the part of a vendor induces the vendee to lay out labor, time and expense, of the fruits of which he is deprived, his injury is to be estimated by the amount of damage he has actually suffered. This term *actually suffered* will not embrace damages resulting from loss of profits or the like, but is confined down and limited to the direct consequences of the injury sustained. In this case the question of fraud was a fact for the jury exclusively to pass upon under the law charged by the Court. The testimony ruled out went to the extent of showing the cost and expense the defendant had been put to. We hold that the proof was admissible. If the jury found the fraud, the proof was applicable. If they did not, the jury would discard it. It was a question for them. Again, we may notice the rejection of the evidence as to the deficiency of the quantity of the land. Our Code, section 2600, declares in a sale of land, if the purchase is per acre, a deficiency may be apportioned in price, but if the sale is by the tract or an entire body, it cannot, except there be deception or mistake amounting to fraud, when it may be apportioned. In looking through this record we are satisfied that the evidence ought to have been admitted, and the law controlling it should have been given to the jury. Upon the merits of this case, upon the facts, we express no opinion. The only question before us is the rejection of evidence. Its weight or significance we do not adjudge.

The whole case, in our opinion, ought to have been submitted to the jury to let them weigh it under the legal rules governing evidence and find a verdict according to the proof and the charge of the Court upon the law.

Judgment reversed upon the ground the Court erred in rejecting the evidence offered, under the facts in this case.