44534. KESLER et al. v. VEAL et al.
(362 SE2d 214)

SMITH, Justice.

We granted the writ of certiorari to the Court of Appeals in *Kesler v. Veal,* 182 Ga. App. 444 (356 SE2d 254) (1987), to decide if a conveyance which if found to be fraudulent in law under OCGA § 18-2-22 will support an award of damages. We hold that it will support the award of damages assessed against the debtor, but under the facts in this case, it will not support an award of damages against the taking party. We affirm in part and reverse in part.

H. V. Kesler paid $69,338.16 in legal fees and costs to the attor-

neys[1] who represented his brother, Jimmy, during his murder trial. Jimmy was convicted and sentenced to life imprisonment. Four days later, April 24, 1981, Jimmy conveyed six tracts of land worth $27,000 to H. V.

Sometime after the conveyances were made, a wrongful death action was filed against Jimmy, and on May 25, 1982 a verdict was entered against him in the amount of $550,000. Subsequently this action, filed on behalf of the victim's minor children to set aside the deeds to H. V. on the ground that the conveyances were fraudulent under OCGA § 18-2-22, was heard. The original complaint sought only to have the deeds set aside. In a later amendment the appellees sought $5,000 compensatory damages for injury to their peace, happiness, and feelings, and $550,000 punitive damages on the basis that the defendants "total actions in this matter have reflected bad faith and fraud entitling Plaintiffs to recover additional damages. . . ."

H. V. contended that the transfer of the property was a bona fide transaction made to partially repay him for the money he advanced for Jimmy's defense.

There was no evidence of actual fraud, *Bacote v. Wyckoff*, 251 Ga. 862, 865 (310 SE2d 520) (1984), on the part of H. V. and no charge was given on bad faith, actual fraud as explained in *Bacote*, supra, or conspiracy.

The jury's verdict set aside the deed, assessed $5,000 actual damages against both Keslers, and $65,000 punitive damages against each of them individually.

The Court of Appeals held that the awards of general and punitive damages as to both Keslers were permitted. We agree that the damages as to the debtor, Jimmy Kesler, are permissible, but not as to the taking party, H. V. Kesler.

The statute provides in pertinent part: "The following *acts by debtors* shall be fraudulent in law against creditors and others and as to them shall be null and void: . . . (2) Every conveyance of real or personal estate . . . had or made *with intention* to delay or defraud creditors, where such intention is known to the taking party; a bona fide transaction on a valuable consideration, where the taking party is without notice or ground for reasonable suspicion of said intent of the debtor, shall be valid; . . ." (Emphasis supplied.) OCGA § 18-2-22.

The legislature obviously did not intend the taking party to be liable for general and punitive damages under OCGA § 18-2-22 based solely upon the fraudulent conveyance without proof of bad faith, actual fraud, or conspiracy on his part. There are four factors that sup-

---

[1] The attorneys, the appellant, and another witness testified that H. V. paid the legal fees for Jimmy.

port this result. 1) The statute specifically states that the acts of the *debtor* shall be fraudulent in law. There is no mention in the statute that the acts of the *taking party shall* be fraudulent in law. If the legislature had intended for the acts of the taking party to be fraudulent in law it would have been simple to draft the bill to read, "The following acts by debtors *and* taking parties shall be fraudulent in law." 2) For the acts of the debtor to be fraudulent in law, the debtor must make the conveyance with the *intention* to delay or defraud the creditor. However, the taking party need not have an *intention* to delay or defraud. The fraud at law of the debtor can be based upon an extremely wide spectrum of mere notice attributable to the taking party. "The second element may be established either by proof of actual knowledge or by proof of circumstances sufficient to put [the taking party] on inquiry. [Cit.]" *Stokes v. McRae*, 247 Ga. 658, 659 (278 SE2d 393) (1981). The legislature would not subject a taking party to the same liability as a debtor based upon such a wide spectrum of circumstances which might merely put him "on inquiry," without any specific intent on his part. 3) Where the creditor can prove intent on the part of the debtor and also show that there were circumstances that were sufficient to put the taking party "on inquiry" the conveyance can be declared void as to the creditor "even though it was given on a valuable consideration." *McLendon v. Reynolds Grocery Co.*, 160 Ga. 763, 766 (129 SE 65) (1925). If the taking party has given valuable consideration, as did H. V. in this case, loses his valuable consideration, has to pay damages, and is also responsible for punitive damages based *solely* upon the statute (without proof of bad faith, actual fraud, or conspiracy on his part), he is placed in the position of suffering greater consequences than the debtor who conveyed the property with the actual *intention* to defraud his creditors. The legislature never intended such an absurd and unequitable result. 4) The suggested form provided by the legislature, OCGA § 9-11-113, indicates that the plaintiff may seek damages from the debtor, have the conveyance to the taking party set aside and the judgment declared a lien on the property, and have a judgment against both defendants for costs. Nothing in the form indicates that the taking party may, on the basis of the conveyance alone, be liable for general and punitive damages.

Based on the above, we hold that the damages as to H. V. Kesler are not allowed and we reverse in part.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Marshall, C. J., Weltner and Hunt, JJ., who dissent.*

WELTNER, Justice, dissenting.

I respectfully dissent.

1. The majority correctly states that the terms of OCGA § 18-2-

22 refer only to a fraudulent transferor, and provide no express remedy against a transferee. That, however, cannot settle the issue of a fraudulent *transferee's* liability to one injured by the fraud.

2. The following statutes are applicable to the issues in this case:

(a) OCGA § 18-2-22 declares the following acts to be fraudulent as against creditors: "Every conveyance of real . . . estate . . . made with intention to delay or defraud creditors, where such intention is known to the taking party. . . ."

(b) OCGA § 51-1-1 provides in part: "A tort is the unlawful violation of a legal right other than a mere breach of contract, express or implied."

(c) OCGA § 51-1-6 provides: "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby."

(d) OCGA § 51-1-8 provides: "Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action."

(e) OCGA § 51-6-1 provides: "Fraud, accompanied by damage to the party defrauded, always gives a right of action to the injured party."

3. "To show conspiracy it is not necessary to prove an express compact or agreement among the parties thereto. The essential element of the charge is the common design; but it need not appear that the parties met together either formally or informally and entered into any explicit or formal agreement; nor is it essential that it should appear that either by words or writing they formulated their unlawful objects. It is sufficient that two or more persons in any manner either positively or tacitly come to a mutual understanding that they will accomplish the unlawful design." *Cook v. Robinson*, 216 Ga. 328, 330 (116 SE2d 742) (1960).

"A conspiracy is defined as 'the combination of two or more persons to do: (a) something that is unlawful, oppressive, or immoral; or (b) something not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive or immoral, by unlawful, oppressive, or immoral means.' [Cits.] The conspiracy is not the gravamen of the charge, but may be both pleaded and proved as aggravating the wrong complained of and enabling the petitioner to recover in one action against all as joint tortfeasors. [Cits.]" *Groover v. Brandon*, 200 Ga. 153, 164 (36 SE2d 84) (1945).

4. From the evidence in this case a jury could have found that the Kesler brothers conspired to defraud the children of Jan Veal Evans,

and in furtherance of this conspiracy, Jimmy Kesler fraudulently deeded real property which he owned to H. V. Kesler, who, in turn, recorded or had recorded the deeds.

5. Given the state of the evidence, it requires no new precept to require one who is *particeps fraudis* to answer in damages to another who is directly and proximately damaged by such fraud.

"Where the case is new in principle, the courts have no authority to give a remedy, no matter how great the grievance; but where the case is only new in instance, and the sole question is upon the application of a recognized principle to a new case, 'it will be just as competent to courts of justice to apply the principle to any case that may arise two centuries hence as it was two centuries ago.' Broom's Legal Maxims (8th ed.), 193. This results from the application of the maxim *ubi jus ibi remedium,* which finds expression in our code, where it is declared that 'For every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other.' Civil Code, § 4929."[1] *Pavesich v. New Eng. Life Ins. Co.,* 122 Ga. 190, 193-4 (50 SE 68) (1904).

DECIDED NOVEMBER 24, 1987 —
RECONSIDERATION DENIED DECEMBER 16, 1987.

*Cathey & Strain, Edward E. Strain III, Andrew J. Hill, Jr.,* for appellants.
*A. Jack Kemp,* for appellees.

---

[1] It is interesting, and gratifying, to note that the Georgia statute quoted by Justice Cobb has been a part of our statutory law since 1863. Orig. Code 1863, § 3176.