### A90A0456. BARNETTE v. PEACE et al.
(395 SE2d 916)

POPE, Judge.

In this fraud case, the jury returned a verdict in favor of appellees Tommy and Judy Peace against the estate of Oland J. Barnette in the amount of $50,000. On appeal, appellant Barnette argues three enumerations of error, each relating to the measure of damages.

In 1982, while they were engaged to be married, the Peaces agreed to buy a house from Barnette at a cost of $38,500. Barnette and Tommy Peace walked the property, with Barnette showing Peace the boundary lines. The house was an unfinished shell and Barnette provided owner-financing. During the next six years, the Peaces paid their mortgage and expended time and money finishing the house. In January 1988, the Peaces attempted to refinance the mortgage debt with a bank. However, they were turned down when a survey revealed that the porch of the house encroached upon the Department of Transportation right-of-way by 2.38 feet. This was not as the line was represented to Tommy Peace by Barnette. Peace testified that the line as represented to him was some forty feet beyond the porch. Don Mahaffey, a real estate appraiser, testified at trial that without the encroachment the property was worth $63,000. With the encroachment, he testified that the property was worth between zero and $63,000. He stated that the difficulty in setting a value was because a buyer would not be able to get financing with the encroachment and 99 percent of buyers needed financing in order to buy. In support of their alternative theory of damages, the Peaces also adduced testimony that the house could be moved back so that the encroachment would be erased at a cost of $27,550. In addition, the trial court permitted the Peaces to testify that they had spent $18,231.57 to finish the house.

In enumeration 3, Barnette argues that the court should not have allowed evidence of the value of the improvements because there was no evidence that the Peaces were deprived of those improvements. In enumeration 2, Barnette argues that any evidence of improvements was irrelevant and immaterial to the issue of damage in a fraud case because such damage is the difference between the property as represented and its actual value or the reasonable cost to correct the defect. In enumeration 1, Barnette argues that the verdict is contrary to the evidence. *Held*:

We affirm. Although on appeal the Peaces argue that Barnette waived any objection to the evidence of the improvements, our review of the record shows that the issue was raised and the trial judge ruled that he would allow the evidence to be admitted. Therefore, we will address the merits. As argued by Barnette, generally "[t]he measure of damages in an action for fraud and deceit is the actual loss sus-

tained, and if the contract is one of purchase and sale the actual damages are the difference between the value of the thing sold at the time of delivery and what its value would have been if the representations made had been true." *Orkin Exterminating Co. v. Bryan*, 163 Ga. App. 804, 805 (294 SE2d 683) (1982). An alternative method of showing the difference in value is to prove the reasonable cost of correcting the defect. *Windsor Forest, Inc. v. Rocker*, 115 Ga. App. 317 (2) (154 SE2d 627) (1967).

However, in the case of *James v. Elliott*, 44 Ga. 237 (1871), the Supreme Court recognized an exception to the general rule: "[W]hen, by the fraud of a vendor, the vendee has been led into expenses, he may recover compensation in damages for the actual injury he has sustained." Id. at 241. In *James*, the buyer of the property had been deceived into thinking that a strip of land containing clay suitable for brickmaking was included in the lot sold. The buyer expended money to set up a brickmaking operation before he discovered the deception. The court held that the buyer was entitled to recover those expenses.

In the present case, the situation is similar. As did the plaintiff in *James*, supra, the Peaces expended money to make the property suitable for their purposes, in this case use as a home, before they discovered the defect (the encroachment). The plaintiff in *James* could have used the brickmaking improvements, but only at the additional trouble of purchasing the clay he thought he had already obtained. So, too, in the present case, the Peaces could continue to use the improvements they made, but only at the cost of not being able to realize the value of those improvements by being able to sell their property or to use the value of the equity in the home. The jury was presented with two alternative methods of computing damage. The first was the value-deprivation method set out above. The second was the cost of moving the house to remove the defect, the encroachment. Obviously, the jury selected the first method. After hearing evidence that the landline was forty feet closer than was represented and the evidence that the Peaces were deprived of the value of the house because of the encroachment, the jury was authorized to find that the alternative method of computing damages by correcting the defect (here, the moving of the house) would not fully compensate the Peaces.

Barnette argues and the dissent agrees that the rule in *James* is inapplicable here because the Peaces have not been deprived of the improvements. We disagree. As established by the testimony of the two bank officers who appeared at trial and the testimony of the real estate appraiser, the condition of the property with the encroachment virtually precludes any potential buyer from purchasing the property. The Peaces have lost the ability to alienate the property. One can also infer from the evidence that the Peaces would also be denied the use

of the equity by virtue of an inability to acquire a home equity loan. The Peaces have thus been deprived of the "fruits" of their labor and expenditures, the value of those improvements as realized by a sale or through a home equity loan. "On appeal, the evidence must be construed to uphold the verdict which has the approval of the trial judge and if there is any evidence to support a verdict it must be affirmed. [Cit.]" *C & S Nat. Bank v. Haskins*, 254 Ga. 131, 136 (327 SE2d 192) (1985). Thus, the jury was authorized to conclude, as it apparently did, that the cost of moving the house, alone, would not compensate the Peaces for their loss.

It follows from the rule set out in *James*, supra, and from the discussion above, that the trial court did not err in allowing evidence of the costs of the improvements. It also follows that we hold that the verdict was not contrary to the evidence.

*Judgment affirmed. McMurray, P. J., Banke, P. J., Birdsong, Beasley and Cooper, JJ., concur. Carley, C. J., Deen, P. J., and Sognier, J., dissent.*

DEEN, Presiding Judge, dissenting.

In *James v. Elliott*, 44 Ga. 237, 242 (1871), the Supreme Court held that "where fraud upon the part of a vendor induces the vendee to lay out labor, time and expense, of the fruits of which he is deprived, his injury is to be estimated by the amount of damage he has actually suffered." The majority opinion correctly recognizes this as an exception to the general measures of damage, i.e., showing the difference between the value of the thing sold at the time of delivery and what its value would have been had the seller's representation about it been true, or showing the reasonable cost of correcting the defect, but misapplies that exception to the instant case.

One of the elements of this exceptional rule is that the vendee must be deprived of the "fruits" of the "labor, time and expense." In *James v. Elliott*, the vendee expended money to set up a brickmaking operation before discovering the deception about the inclusion of clay-bearing land in the lot he had purchased. Without the clay-bearing land, the brickmaking operation was of no benefit to the vendee; *he was deprived* of the "fruits" of his labor and expenses.

In the instant case, however, the appellees expended $18,231.57 to finish the shell into a home, in which they still reside. They have in *no way been deprived* of the benefit of those expenditures. Under these circumstances, recovery for the $18,231.57 was unauthorized and must be stricken from the judgment; otherwise, we must reverse. I must dissent from the majority opinion's affirmance of the judgment which includes an award for those expenses for home improvements.

I am authorized to state that Chief Judge Carley and Judge Sognier join in this dissent.

DECIDED JULY 16, 1990.

*Archer & Howell, Shepherd L. Howell, Charles Crawford*, for appellant.
*David C. Keever*, for appellees.