A91A1088. LAWSON et al. v. ATHENS AUTO SUPPLY & ELECTRIC, INC.
A91A1089. ATHENS AUTO SUPPLY & ELECTRIC, INC. v. TITAN INVESTMENT MANAGEMENT COMPANY, INC. et al.
(409 SE2d 60)

BIRDSONG, Presiding Judge.

Athens Auto Supply & Electric, Inc. (Athens Auto) obtained a consent judgment against Amercon Marketing Systems, Inc. (Amercon) on June 4, 1985, for $11,798.43 owed on account. Unable to collect on this judgment, Athens Auto subsequently sued Hugh Lawson and Holiday RV Products, Inc. (Holiday RV), Titan Investment Management Company, Inc. (Titan) and First Thrift Company, Inc. (First Thrift), for fraudulent conveyance of the assets of Amercon in avoidance of the debt. Athens Auto alleged that Lawson removed or trans-

ferred the assets of Amercon to those other corporations, Holiday RV, Titan and First Thrift, which he managed and operated.

At the close of plaintiff's evidence, the trial court granted directed verdicts to Titan and First Thrift and denied the motions of Lawson and Holiday RV for directed verdicts. The jury rendered a verdict in favor of Athens Auto and against defendants Lawson and Holiday RV, for $19,005 general damages and $130,000 punitive damages. Lawson and Holiday RV appeal this verdict, complaining of the denial of their motions for directed verdict and motions for judgment n.o.v., and complaining generally that as transferees they could not be liable for punitive damages. See *Kesler v. Veal*, 257 Ga. 677 (362 SE2d 214); *Kesler v. Veal*, 182 Ga. App. 444 (356 SE2d 254), and see remittitur, *Kesler v. Veal*, 186 Ga. App. 93 (367 SE2d 132). Appellants also contend the punitive award was excessive. Athens Auto cross-appeals the grant of directed verdicts to Titan and First Thrift. *Held*:

1. Cross-appellees Titan and First Thrift filed a motion to dismiss the cross-appeal of Athens Auto, contending the cross-appeal is untimely because Athens Auto did not appeal the directed verdicts in favor of Titan and First Thrift within 30 days from their rendition. The defendants Holiday RV and Lawson did not file an appeal within 30 days of the June 6, 1990 judgment following the verdict against them, but on June 19, 1990 filed a motion for judgment n.o.v. and in the alternative a motion for new trial. These motions were denied January 7, 1991; Holiday RV and Hugh Lawson filed this appeal January 30, 1991; and plaintiff Athens Auto filed a cross-appeal on February 1, 1991, complaining of the trial court's grant of directed verdict to Titan and First Thrift during trial. Titan and First Thrift contend that the motion for judgment n.o.v. or new trial filed by Holiday RV and Lawson on June 19, 1990, did not toll the time for appeal by Athens Auto of the directed verdicts in favor of Titan and First Thrift.

OCGA § 9-11-54 (b) provides that in cases involving multiple claims or multiple parties, the court may direct the entry of a final judgment as to fewer than all of the claims or parties "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." The directed verdicts in favor of Titan and First Thrift were not final judgments. See OCGA § 5-6-34 (a) (1). The

case was still pending in the court below because the time to appeal the verdict and judgment against Holiday RV and Lawson was tolled. While the case was still pending as to some parties, the judgment in favor of others was not final. See *Crumbley v. Wyant*, 183 Ga. App. 802 (360 SE2d 276) where we held that a judgment denying new trial as to one defendant was not final because plaintiff's suit was still pending in the trial court on account of the new trial granted to the other defendant. See also *Centennial Ins. Co. v. Sandner, Inc.*, 259 Ga. 317 (380 SE2d 704), as to a cross-appeal filed against a party who is not an appellant; and see OCGA § 5-6-38.

"OCGA § 5-6-30 provides that the Appellate Practice Act shall be construed liberally 'so as to bring about a decision on the merits of every case appealed and to avoid dismissal of any case or refusal to consider any points raised therein.'" *Centennial Ins. Co.*, supra. It was in the contemplation of OCGA § 9-11-54 (b) that cases involving multiple parties or multiple claims, which by nature may contain multiple rulings as to fewer than all parties or claims, shall be expeditiously tried and the right to appeal not lost or procedurally confused by varying rights to direct appeal among multiple parties in a single case. A directed verdict is not a final judgment where the case is still pending and where a determination of no just reason for delay and a certification of final judgment is not issued pursuant to OCGA § 9-11-54 (b). See OCGA § 5-6-34 (a), (b); see, e.g., *Cramer v. Parrott*, 149 Ga. App. 385 (254 SE2d 504). The motion of Titan and First Thrift to dismiss the cross-appeal of Athens Auto is denied.

2. We held in *Kesler v. Veal*, 182 Ga. App. 444, supra, that under OCGA § 18-2-22 a suit for general and punitive damages may be maintained against the debtor and transferee for fraudulent conveyance of assets in avoidance of a debt. The Supreme Court on certiorari reversed the award of damages against the transferee in that case, on grounds that *"under the facts in this case*, [the evidence] will not support an award of damages against the taking party," the rationale being that "[t]he legislature obviously did not intend the *taking party* to be liable for general and punitive damages under OCGA § 18-2-22 based solely upon the fraudulent conveyance *without proof of bad faith, actual fraud, or conspiracy on his part.*" (Emphasis supplied.) *Kesler v. Veal*, 257 Ga. 677, supra at 678; and see 186 Ga. App. 93, supra. It is therefore clear that if there is evidence of bad faith, actual fraud, or conspiracy on the part of the taking party or transferee in receiving assets fraudulently conveyed to him by the debtor, an award of general and punitive damages against the transferee may be upheld.

3. On June 4, 1985, defendant/appellant Hugh Lawson agreed to a consent judgment in favor of plaintiff Athens Auto, on behalf of Amercon, a corporation wholly owned, operated and managed by

Lawson for the manufacture of van conversions. Amercon was then doing business in a facility on Jimmy Daniel Road in Athens, but according to Lawson, Amercon's business was in trouble. Six days prior to the date of this consent judgment, Lawson transferred equipment valued at $161,000 from the business facility on Jimmy Daniel Road in Athens to the business facility of Weiner and Streck (Holiday Chrysler-Plymouth) in Gwinnett County, Lawson having agreed with Weiner and Streck to form a new corporation, defendant Holiday RV Products, Inc., for the purpose of conducting a van conversion business. Holiday RV was to be managed and operated by Lawson, who also acquired 50 percent of the stock. On June 1, 1985, three days prior to the consent judgment against Amercon, Lawson as president of Holiday RV issued to himself Holiday RV's promissory note for $161,289.23. Lawson conducted a van conversion business for Holiday RV in Gwinnett County until late 1986, when he bought out Weiner's and Streck's interests in Holiday RV and moved Holiday RV back to the facility on Jimmy Daniel Road in Athens, which facility was purchased by Titan, a Lawson family corporation.

After plaintiff's June 4, 1985 consent judgment was obtained, defendant Lawson swore, in answer to post-judgment interrogatories, that Amercon had no leasehold interests and no assets, including equipment. However, plaintiff contended and produced evidence to show that the $161,000 worth of equipment which Lawson transferred to Holiday RV on May 28, 1985, as his (Lawson's) own property, was in fact the property and assets of Amercon: The van conversion equipment came from the Jimmy Daniel Road facility in Athens where Amercon was engaged in the van conversion business; Lawson did not list this equipment and inventory as his own assets in a financial statement he prepared in February 1985; on May 28, 1985, Amercon pledged $45,000 in equipment and inventory to First Thrift (a Lawson family corporation) as collateral for a loan in that amount by First Thrift to Amercon, thereby showing, contrary to the testimony of Lawson, that Amercon did have assets in the form of equipment and inventory as of May 28, six days before this consent judgment was entered against Amercon, and also showing that Amercon received $45,000 in money for the pledge of this equipment (and Lawson admitted taking $38,000 out of Amercon as a result of this loan from First Thrift); further, the proprietor of Athens Auto, Massey, testified he saw some of this equipment in use by Amercon when it operated at the Jimmy Daniel Road location. Although the defendants Lawson and Holiday RV assert there is no direct evidence this equipment belonged to Amercon, the evidence, viewed in favor of the jury verdict, supports a conclusion that the equipment moved from the Jimmy Daniel Road facility where Amercon did business was the property and assets of Amercon. Plaintiff contended it should not be

penalized for Lawson's failure to produce discovery evidence describing what equipment Amercon had when this equipment was transferred to Holiday RV, but it is more proper to say the lack of proof as to what equipment was owned by Amercon, including the $45,000 worth of equipment pledged by Amercon to First Thrift as loan collateral on May 28, while not creating a burden of proof upon the defendants, was a circumstance to be considered by the jury in determining the weight of the evidence produced by the plaintiff on this point.

On these grounds alone, the evidence supports a finding by the jury that Lawson, individually and as alter ego for Amercon, transferred assets of Amercon to Holiday RV and that, individually and as president, 50 percent owner and manager of Holiday RV, he accepted the transfer of Amercon's assets and issued to himself a $161,289.23 promissory note at 12 percent interest therefor. (The pre-incorporation agreement among Lawson, Weiner and Streck authorizes a promissory note to Lawson of $100,000 for this equipment transferred to Holiday RV.)

4. As to defendant/cross-appellee First Thrift, which was a Lawson family corporation, we find no evidence raising an issue of fact that First Thrift fraudulently accepted a transfer of assets of Amercon. The trial court correctly directed a verdict in favor of defendant First Thrift.

5. A directed verdict is authorized only where "there is no conflict in the evidence as to any material issue and the evidence [adduced], with all reasonable deductions therefrom, shall demand a particular verdict." OCGA § 9-11-50 (a). The standard for granting judgment n.o.v. is the same. *Joe N. Guy Co. v. Valiant Steel &c.,* 196 Ga. App. 20, 21 (395 SE2d 310). The evidence in this case clearly did not *demand* a finding in favor of defendants Lawson and Holiday RV; the verdict and award against them is supported by evidence, which on appeal is viewed in favor of the finding of the jury whose function it is to weigh the evidence (*Barnette v. Peace,* 196 Ga. App. 440, 442 (395 SE2d 916); and see *Antique Center of Roswell v. City of Roswell,* 196 Ga. App. 894 (397 SE2d 146); *Ingram v. Peterson,* 196 Ga. App. 888, 890 (397 SE2d 141); and *Wisenbaker v. Warren,* 196 Ga. App. 551, 553 (396 SE2d 528)).

Upon this same standard of review of determinations on motions for directed verdict (*Ingram,* supra), however, we find the trial court erred in granting a directed verdict to defendant Titan, but the grant of directed verdict to defendant First Thrift was not error.

6. As to defendant Titan Investment Management Company, which is also a Lawson family corporation managed and operated by Lawson, there is evidence from which the jury could find a fraudulent transfer, with "bad faith, actual fraud, or conspiracy" on the part of

Titan as managed and operated by Lawson as alter ego. *Kesler v. Veal*, 257 Ga. 677 at 678, supra. We first note that when assessing the evidence on Titan's motion for directed verdict, the trial court was required to draw all reasonable deductions and inferences in favor of the respondent, Athens Auto, and to construe the evidence and testimony in its favor. *Carver v. Jones*, 166 Ga. App. 197 (303 SE2d 529); *Folsom v. Vangilder*, 159 Ga. App. 844 (285 SE2d 583).

The evidence shows that Amercon continued to lease the facility on Jimmy Daniel Road in Athens, which was owned by J. M. Rhodes, even after Holiday RV was formed in May-June, 1985. There is evidence, specifically in deposition testimony of Rhodes, that in its lease, Amercon had an option to purchase this facility. At trial Rhodes testified he agreed "to have that lease assigned to a corporation owned by Mr. Lawson," and that "Mr. Lawson . . . wanted to know if I'd just let him have the lease, so I did." (Amercon's lease was never produced in evidence.) Lawson admitted negotiating a purchase of this property for himself and then assigning the contract to purchase to Titan. There is therefore evidence that the negotiation and assignment to Titan of a purchase contract was done under Amercon's option to purchase in its lease; moreover, Rhodes in deposition testified that the option to purchase in Amercon's lease "was a fixed, there was a price fixed . . . three-forty or sixty [thousand], I don't remember now. Something in that neighborhood"; and that in 1986, Lawson and his daughter "came along one day and said they wanted to exercise the option. . . ." Rhodes in deposition further testified, "I didn't want to sell it to anybody honestly, but I had claused in the original lease that the lessee could buy it. So I guess you could say that [Amercon] — well, they didn't actually, they didn't exercise the option. I actually, this investment company with Ms. Lawson [Titan], all of them came up, and that was where the sale was made." Rhodes at trial testified that he did not remember whether the option was at a fixed price; in deposition he testified he sold the property to Titan on account of the option to purchase clause in Amercon's original lease.

In connection with Titan's purchase of the Jimmy Daniel Road facility in October 1986, Lawson on behalf of Amercon executed an affidavit saying the property was free of all liens or judgments or encumbrances. At the same time, on behalf of Amercon, Lawson executed to Rhodes a formal "cancellation of lease." Defendants argued these transactions were without significance; that is, that Amercon did not have a lease and an option to purchase because Amercon executed this "cancellation of lease." This assertion clearly begs the question. If Amercon had no lease interest and no option, it would have been pointless to cancel its interest; it could not, by the mere device of "cancelling" it, prove it had not existed. Moreover, Lawson

admitted that he "negotiated [the purchase of the Jimmy Daniel Road property] for me originally and then assigned that contract to purchase to Titan." Since there was evidence Rhodes had testified he sold the property at the fixed price option in Amercon's lease, a reasonable inference to be considered by the jury is that Amercon assigned its purchase option to Titan.

The jury might find defendants' assertions that Amercon did not have a lease because it was "in default" to be similarly transparent. The evidence shows that Amercon's lease payments during all this time were paid by Holiday RV. Moreover, Rhodes never testified that Amercon was "in default" on its lease; his testimony raises the inference that there was no question of Amercon being "in default," rather its lease was valid and enforceable. Most importantly, Rhodes testified he sold the property to Lawson's family investment corporation (Titan) only because he was "trying to keep [his] word on" the option to purchase which was in Amercon's lease. The inference is sustainable that Lawson and his daughter represented, and Rhodes perceived, that the Lawson family corporations, Amercon and Titan, as interchangeable or alter egos, and allowed Titan to purchase the property at the fixed price option amount given in Amercon's lease because he was trying to honor his obligation to Amercon.

There is therefore evidence to support a jury verdict for damages, general and punitive, against Titan, on plaintiff's theory that Amercon cancelled its lease and purported to remove itself from the milieu, for the purpose of allowing Titan to purchase this property at Amercon's fixed price option; that is, that Titan bought the property to keep it out of Amercon and avoid this debt, or at least, that Amercon's valuable asset of the option to purchase was transferred to Titan.

It should be noted here that in granting directed verdict to Titan, the trial court, after a fair and excellent consideration of all the evidence, was inclined to conclude there was evidence to find Titan liable, but ultimately directed a verdict to Titan after remarking that Rhodes had negotiated a new price with Titan for the sale of his property, and that he did not sell it upon Amercon's option to purchase. The evidence in the record, however, shows clearly to the contrary: that Rhodes sold the property to Titan because of and under the obligation of Amercon's option, and at the fixed price provided in Amercon's option. This evidence must be construed most strongly to the plaintiff/respondent; we are satisfied, based on the trial court's own remarks, that if the actual testimony of Rhodes had been recalled to the trial court's attention, it would not have granted the directed verdict to Titan. We therefore, on review of the actual evidence, reverse the directed verdict to Titan.

7. The evidence as to all defendants, except First Thrift, which

was properly granted a directed verdict, shows that Lawson operated and managed all corporations, and commingled and confused the funds of all (including making numerous loans to himself and from one to the other and among all, while the evidence raises the reasonable inference that most of these loans, particularly those to himself, were unrepaid) so as to have been acting as the alter ego for all when these transfers were made of Amercon's assets, and authorizing a finding that the corporate veil had been pierced in the particular facts of this case. See *Brunswick Mfg. Co. v. Sizemore*, 183 Ga. App. 482, 483 (359 SE2d 180); *Hogan v. Mayor &c. of Savannah*, 171 Ga. App. 671, 673 (320 SE2d 555).

8. Appellants contend the punitive damages award against Lawson and Holiday RV was so excessive as to evince bias of the jury. We disagree. The evidence of defendants' conduct, individually and as alter ego of the corporate defendants, supports this award. Massey testified that when he approached Lawson about the debt, Lawson told him to "get out" and to get off his property, and then told Massey he would pay the debt on his time and not on Massey's time. The evidence of bad faith of Lawson individually and as alter ego of the corporations, includes his transfer of $161,000 of equipment which the jury could find belonged to Amercon, and the issuance by him as president of Holiday RV to himself of the promissory note of Holiday RV of $161,289.23 for that equipment; includes Holiday RV's payment of the rent on Amercon's lease of the Jimmy Daniel Road property in Athens although the two were ostensibly separate entities connected only by the individual Lawson; and includes Lawson's answer to post-judgment interrogatories that Amercon had no leasehold interest, when in fact Amercon had a lease with purchase option, which Lawson's family corporation, Titan, then exercised after Lawson, as president of Amercon, purported to "cancel" Amercon's lease, thus to make it appear Amercon had no lease and no purchase option, while at the same time swearing by affidavit that the leased property was free of liens, judgments or encumbrances, and while Lawson testified at trial that Amercon was "in default" on that lease so as to make it appear again that Amercon had no lease and no purchase option which Titan could exercise, whereas the evidence shows Rhodes never considered Amercon in default and sold the property to Titan under Amercon's option to purchase at a fixed price, and Amercon was not in fact in default as its rent was paid by Holiday RV. Since Lawson admitted negotiating the purchase of the property for himself and then assigning the contract to purchase to Titan; and since according to Rhodes, Titan purchased this property under the fixed-price option provided in Amercon's lease, it may reasonably be concluded that Lawson assigned to Titan Amercon's option to purchase rather than exercise it for Amercon, and that Titan, through Lawson, knowingly

and in bad faith accepted and exercised the transfer of Amercon's option to purchase while Lawson was fully aware of Amercon's debt to the plaintiff, and had indeed sworn that no such encumbrance existed, just as he earlier had sworn that Amercon had no leasehold interest. "[I]t was properly left up to the jury to assess to what extent appellant should be made to feel the impact of its actions on claimants to prevent similar situations from occurring in the future. The punitive damages awarded appellee were not one hundred times the total of actual and consequential damages, as was the case in *Colonial Pipeline [Co. v. Brown*, 258 Ga. 115 (365 SE2d 827)]. . . . [U]nder the circumstances, 'we do not have the temerity to propose that our ivory tower evaluation should be substituted for that of (12) jurors plus the . . . trial judge . . . who as "the 13th juror" have decided the conduct of (appellant) was such that exemplary damages of ($150,000) should be awarded "either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff." (Cit.)' [Cit.]" *Insurance Co. of North America v. Smith*, 189 Ga. App. 353, 358 (8) (375 SE2d 866) (cert. den.). The punitive damages in that case were $150,000, as compared to actual damages of less than $9,000. That was a larger award, in fact and relation, than this punitive award of $130,000 on the original judgment debt of more than $11,000. We are unauthorized to hold this punitive damages award to be excessive as a matter of law.

Accordingly, we affirm the jury verdict as to Lawson and Holiday RV; we affirm the grant of directed verdict to First Thrift; and we reverse the grant of directed verdict to Titan.

*Judgment affirmed in part and reversed in part. Pope and Cooper, JJ., concur.*

### On Motion for Reconsideration.

Titan urges us to uphold the directed verdict to Titan, contending there is no evidence in the case that Amercon's lease of the Jimmy Daniel Road property contained a fixed option to purchase and no evidence that Titan's purchase was made under Amercon's option. Titan asserts: "The only evidence . . . as to the fixed price specified in the option . . . was Mr. Rhodes' testimony that the option provided for a fixed purchase price of either 340 or 60 and he didn't remember which. . . ." Titan then asserts that since Lawson testified Titan paid $341,000 in a negotiated purchase price, this evidence showing that "the price by Titan was different, however slight, from the purchase price contained in the option shows, as testified by Hugh Lawson, that Titan did not exercise the purchase option held by Amercon, but rather negotiated their own sale with Mr. Rhodes."

In these statements, Titan concedes that there *is* evidence that

Titan purchased this property by exercising the debtor Amercon's leasehold purchase option, via "Mr. Rhodes' testimony that the option provided for a fixed purchase price of either [$340,000 or $360,000]." Obviously Lawson's testimony as to the price or a slightly different price paid by Titan is not conclusive, and is not as a matter of law inconsistent with Rhodes' testimony that he sold the property at a fixed price option; nor is this issue controlled by any evidence that Titan did or did not get a "good deal" at this fixed price or that Lawson had executed a written "cancellation" of Amercon's lease before Titan bought the property. As to whether the price paid by Titan to acquire this property was a negotiated price or was paid under fixed option which had belonged to Amercon and was fraudulently transferred to or exercised by Titan while Lawson stated on oath that the debtor Amercon had no leasehold interests, this is the entire jury question. The evidence of Rhodes' testimony at his deposition was properly admissible under OCGA § 9-11-32 (a) (1), particularly as he had difficulty with his memory at the time of trial and conceded the deposition was closer in time to the events. Resolution of statements made by Rhodes at deposition and at trial, including whether he made such statements, was for the jury. The evidence and all reasonable deductions plainly did not *demand* a verdict for Titan.

*Motion for reconsideration in Case No. A91A1088 denied; motion of Hugh Lawson and Holiday RV Products, Inc., for reconsideration of the affirmance of the award for punitive damages in Case No. A91A1089 denied.*

DECIDED JULY 2, 1991 —
RECONSIDERATION DENIED JULY 23, 1991 —

*Smith, Gilliam & Williams, Steven P. Gilliam, Bradley J. Patten*, for Lawson and Holiday RV Products.
*Henry & Pearson, J. Hue Henry*, for Athens Auto Supply.
*Kardos, Warnes & McElwee, John E. Kardos*, for Titan.