**UNITED STATES of America, Plaintiff,**

v.

**Arthur P. TRANAKOS,
et al., Defendants.**

**Civ. A. No. 1:88–cv–1437–MHS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 9, 1991.

Sharon Douglas Stokes, Office of U.S. Atty., N.D. Ga., Atlanta, Ga., Carl Q. Carter, U.S. Dept. of Justice, Tax Div., Washington, D.C., pro hac vice, for plaintiff.

Arthur P. Tranakos, pro se.

David Jewett Llewellyn, Office of David J. Llewellyn, Atlanta, Ga., for defendant Sarah B. Tranakos.

### ORDER

SHOOB, District Judge.

This matter is presently before the Court on the Government's motion for partial summary judgment and defendant Sarah B. Tranakos's motion for summary judgment. For the reasons stated below, the Court will grant the Government's motion and grant in part and deny in part defendant's motion.

### DISCUSSION

#### 1. *Summary Judgment Standard*

▪ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court must consider the evidence in the light most favorable to the nonmoving party and resolve all *reasonable* doubts in favor of the nonmoving party. *Rollins v. Tech-South, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

▪ The initial burden is on the party moving for summary judgment to demonstrate that the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion must present evidence that creates a genuine issue of material fact. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at 248, 106 S.Ct. 2505 at 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the moving party." *Id.* A fact is "material" if it is "identified by the controlling substantive law as an essential element of the nonmoving par-

ty's case." *Id.* Thus, "if the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted); *see Barnes*, 814 F.2d at 609 (equating standards for granting summary judgments and directed verdicts).

#### 2. *Plaintiff United States Of America's Motion For Partial Summary Judgment*

##### A. Background

On June 16, 1981, August 17, 1981, and October 7, 1982, Arthur P. Tranakos ("Mr. Tranakos") filed income tax returns for, respectively, the years 1975, 1976, 1977, and 1978. On November 19, 1985, the United States Tax Court entered the stipulated decision of Mr. Tranakos and the Internal Revenue Service ("IRS"), finding that Mr. Tranakos owed $95,833.23 for unpaid income taxes and penalties for the years 1975, 1976, 1977, and 1978. *See Arthur P. Tranakos v. Commissioner of Internal Revenue*, Docket No. 39796–84. Copies of four Certificates of Assessments and Payments, certified as true and correct transcripts by an IRS officer, reflect that Mr. Tranakos was assessed for unpaid income taxes, plus interest and delinquency and negligence penalties, for the years 1975, 1976, 1977, and 1978 on February 25, 1986, and assessed fees and costs on various dates thereafter. The amounts assessed totaled $186,686.05, and, as of January 31, 1990, statutory interest totaled $90,-818.89. Copies of five Certificates of Assessments and Payments, also certified as true and correct transcripts by an IRS officer, reflect that Mr. Tranakos was assessed $12,097.51 for unpaid employment taxes, penalties, and interest for the tax quarters 8503, 8506, 8606, 8609, and 8612. A payment in the amount of $1,707.39 was applied on October 28, 1987, against Mr. Tranakos's tax liability for the tax quarter 8503. As of January 31, 1990, statutory interest totaled $4,948.34. The Government now moves for partial summary judgment on Count I of the Complaint to the extent that it alleges that it is entitled to judgment against defendant Mr. Tranakos

for unpaid income taxes, penalties, and interest for the years 1975, 1976, 1977, and 1978 in the amount of $277,504.94, as of January 31, 1990, plus statutory additions thereafter, and unpaid employment taxes for the tax quarters 8503, 8506, 8606, 8609, and 8612 in the amount of $15,338.46, as of January 31, 1990, plus statutory additions thereafter.

### B. Discussion

■ Mr. Tranakos does not challenge the income and employment tax liability determinations of the IRS. Instead, he contends that the IRS did not follow the assessment procedures established in 26 U.S.C. § 6203 and 26 C.F.R. 301.6203–1.[1] Mr. Tranakos correctly notes that the basis of tax liability is the assessment and that, in order for a tax deficiency to be assessed against a taxpayer, an assessment officer must sign and date a Form 23–C. Mr. Tranakos rests his argument on the Government's failure to produce copies of or originals of the relevant Form 23–Cs. He contends that the aforementioned Certificates of Assessments and Payments that were produced by the Government do not establish that the assessments were made in the manner prescribed by the statute and regulations.

This precise argument was considered and rejected by the Court of Appeals in *United States v. Chila*, 871 F.2d 1015 (11th Cir.1989), *cert. denied*, 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989). The Court concluded that a Certificate of Assessment is presumptive proof of a valid assessment. *Id.* at 1017–18 (citing *United States v. Dixon*, 672 F.Supp. 503, 505–06 (M.D.Ala.1987), *aff'd per curiam*, 849 F.2d 1478 (11th Cir.1988)). *See also Brafman v. United States*, 384 F.2d 863, 867 (5th Cir. 1967); *United States v. Miller*, 318 F.2d 637, 639 (7th Cir.1963); *Egbert v. United States*, 752 F.Supp. 1010, 1019 (D.Wyo. 1990), *aff'd per curiam*, 940 F.2d 1539 (10th Cir.1991); *Rossi v. United States*, 755 F.Supp. 314, 318 (D.Or.1990); *United States v. Posner*, 405 F.Supp. 934, 937 (D.Md.1975). Accordingly, since Mr. Tranakos has presented no countervailing proof to overcome the accuracy of the challenged Certificates, "the Court is satisfied that the Government has established that the claimed tax liabilit[ies were] properly assessed against [Mr. Tranakos]." *Chila*, 871 F.2d at 1018 (quoting *Dixon*, 672 F.Supp. at 506).

■ Mr. Tranakos also argues that because the assessments for unpaid income taxes for the years 1975, 1976, 1977, and 1978 were made on February 25, 1986, more than three years after each of the four tax returns was filed, the assessments were barred by the applicable statute of limitations. The Court disagrees. Although 26 U.S.C. § 6501(a) provides that the limitations period for filing a tax assessment runs for three years from the date the tax return was filed, 26 U.S.C. § 6503(a)(1) suspends the three-year limitations period until the decision of the tax court becomes "final" and for 60 days thereafter. In *Sherry Frontenac, Inc. v. United States*, 868 F.2d 420 (11th Cir.1989), after reviewing the applicable statutes, the Court of Appeals concluded that stipulated tax decisions are "final" 90 days after the tax court decision is entered. *Id.* at 424; *see also Pesko v. United States*, 918 F.2d 1581 (Fed.Cir.1990). The stipulated decision in *Arthur P. Tranakos v. Commissioner of Internal Revenue* was entered on November 19, 1985, and thus became final 90 days later, on or about February 17, 1986. Therefore, the February 25, 1986, assessments were timely since they

---

1. 26 U.S.C. § 6203 provides that "[t]he assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment." 26 C.F.R. § 301.6203–1 provides, in pertinent part, that "[t]he assessment shall be made by an assessment officer signing the summary record of assessment. The summary record through supporting records shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment.... The date of the assessment is the date the summary record is signed by an assessment officer...." Apparently, the summary record is a "Form 23–C" within the IRS.

were made within 60 days after the tax decision became final. /

## 3. Defendant Sarah B. Tranakos's Motion For Summary Judgment

### A. Background

In Count II of the Complaint, the Government contends that Mr. Tranakos fraudulently transferred funds to his wife, defendant Sarah B. Tranakos ("Ms. Tranakos"), during the years 1980 through 1985 at a time when he was indebted to the Government for unpaid income and employment taxes. The Government contends that it is entitled to judgment against Ms. Tranakos as the "transferee" of her husband in the amount of $272,156.47, plus interest. The Government predicates Ms. Tranakos's liability on O.C.G.A. § 18–2–22 (1991).[2] See Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958); United States v. Ressler, 433 F.Supp. 459, 463 (S.D.Fla. 1977), aff'd, 576 F.2d 650 (5th Cir.1978), cert. denied, 440 U.S. 929, 99 S.Ct. 1265, 59 L.Ed.2d 485 (1979). Ms. Tranakos now moves for summary judgment on Count II.

### B. Discussion

■ Ms. Tranakos argues that she is entitled to summary judgment because the undisputed facts establish that the transfers from A. Tranakos to her were not "fraudulent" within the meaning of O.C.G.A. § 18–2–22. The Court finds, however, that when viewed in the light most favorable to the Government, the evidence cited by the Government puts into issue numerous material facts, most notably, facts bearing upon the applicability of § 18–2–22(2). For example, the evidence arguably establishes that, from 1980 through June 1985, during a time when Mr. Tranakos was indebted to the United States for, among other things, unpaid taxes for the years 1975, 1976, 1977, and 1978, (1) Mr. Tranakos deposited receipts from his legal practice into bank accounts opened in the names of The Snuggery, Inc., Treetop, Inc., and Georgia Professional Building and wrote checks on these accounts payable to Ms. Tranakos; (2) Ms. Tranakos deposited these checks into her own account and wrote checks on this account to pay mortgage and other "household" expenses; and (3) Ms. Tranakos knew that the checks were not drawn on A. Tranakos's personal account, that the checks were the major source of the deposits into her account, and that she had not signed a joint tax return with Mr. Tranakos for three or four years. From this and other evidence cited by the Government, the Court concludes that a reasonable juror could find that Ms. Tranakos knew or should have known that the transfers to her from A. Tranakos were made with the "intention to delay or defraud [Mr. Tranakos's] creditors."[3] O.C.G.A. § 18–2–22(2).

■ Ms. Tranakos also argues that "certain" statutes of limitations bar "part" of

---

**2.** O.C.G.A. § 18–2–22 provides:

The following acts by debtors shall be fraudulent in law against creditors and others and as to them shall be null and void:

(1) Every assignment or transfer by a debtor, insolvent at the time, of real or personal property or choses in action of any description to any person, either in trust or for the benefit of or on behalf of creditors, where any trust or benefit is reserved to the assignor or any person for him;

(2) Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description had or made with intention to delay or defraud creditors, where such intention is known to the taking party; a bona fide purchaser on a valuable consideration, where the taking party is without notice or ground for reasonable suspicion of said intent of the debtor, shall be valid; and

(3) Every voluntary deed or conveyance, not for valuable consideration, made by a debtor who is insolvent at the time of the conveyance.

**3.** Ms. Tranakos also argues that even if the conveyances were "fraudulent" within the meaning of O.C.G.A. § 18–2–22, under Georgia law, the Government is prohibited from recovering a personal money judgment against her. It is apparent from the Court's review of Georgia law, however, that a creditor can obtain a personal money judgment against a transferee pursuant to § 18–2–22. See Kesler v. Veal, 182 Ga.App. 444, 356 S.E.2d 254 (1987), aff'd in part, rev'd in part, 257 Ga. 677, 362 S.E.2d 214 (1987); Jones v. Spindel, 239 Ga. 68, 235 S.E.2d 486 (1977).

the relief sought by the Government. First, she contends that since Georgia limits the right to set aside fraudulent conveyances to seven years, the Government is barred from recovering any transfer to her from Mr. Tranakos that occurred prior to July 5, 1981, that is, seven years before the Complaint was filed. As the Government points out, however, the federal statute of limitations applies and that statute, 26 U.S.C. § 6502(a)(1), provides that a suit to collect taxes must be commenced within six years after the assessment of the tax. *See United States v. Updike,* 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984 (1930). As set out in the Certificates of Assessments and Payments produced by the Government, the assessments of Mr. Tranakos's unpaid income taxes were made on February 25, 1986. Thus, with regard to Mr. Tranakos's unpaid income taxes for the years 1975, 1976, 1977, and 1978, this action, which was commenced on July 5, 1988, is not barred by § 6502(a)(1).

■■■■ Second, Ms. Tranakos contends that since Mr. Tranakos's so-called § 6672 tax liabilities for the tax quarter 7912 were assessed on April 20, 1981, and May 3, 1982, the Government's suit to collect such taxes is barred by 26 U.S.C. § 6502(a)(2). However, as the relevant Certificate of Assessments and Payments produced by the Government indicates, an "offer in compromise" was submitted by Mr. Tranakos to the Government and remained pending from November 1, 1984, to September 5, 1988, when it was rejected. Thus, since by its terms the offer suspends the statute of limitations for the period in which it was pending and one year thereafter, this action, with regard to Mr. Tranakos's § 6672 tax liabilities for the tax quarter 7912, is not barred by § 6502(a)(1).[4]

■■■■ Third and last, Ms. Tranakos contends that Mr. Tranakos's so-called § 941 tax liabilities for the tax quarters 8506, 8606, 8609, and 8612 cannot provide a basis for recovery against her as a transferee because the Complaint does not allege that transfers were made to her during these time periods but instead alleges that transfers were made to her during the years 1981 through 1985. Apparently, the Government recognizes that Ms. Tranakos cannot be held liable as a transferee for her husband's § 941 tax liabilities for the tax quarters 8606, 8609, and 8612. *See* Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 5. The Government argues, however—and the Court concurs—that Ms. Tranakos can be held liable for her husband's tax liabilities for the tax quarter 8506, which runs from April 1, 1985, through June 30, 1985, because the Complaint alleges that transfers were made to her until June 1985.

## CONCLUSION

For the reasons stated above, the Court GRANTS plaintiff United States of America's motion for partial summary judgment on Count I of the Complaint [# 36–1] and DIRECTS the Clerk to enter judgment against defendant Arthur P. Tranakos and in favor of the United States of America in the amount of $277,504.94 for unpaid income taxes, penalties, and interest as of January 31, 1990, plus statutory additions thereafter, and $15,338.46 for unpaid employment taxes as of January 31, 1990, plus statutory additions thereafter. The Court DIRECTS plaintiff to submit a statement outlining the "statutory additions" that have accrued since January 31, 1990. In addition, the Court GRANTS IN PART and DENIES IN PART defendant Sarah B. Tranakos's motion for summary judgment

4. Ms. Tranakos contends that since the offer in compromise produced by the Government is not a copy of the actual offer in compromise submitted by Mr. Tranakos but simply a copy of the form (Form 656) that is made available to the public, it cannot be considered evidence of the terms of the offer submitted by Mr. Tranakos. The Court disagrees. There is no dispute that *an* offer in compromise was submitted on November 1, 1984, and was rejected on September 5, 1988. Absent evidence from Ms. Tranakos that Mr. Tranakos's offer was not submitted on Form 656 and did not contain the terms challenged by Ms. Tranakos, the Court will consider Form 656 as evidence of the challenged terms.

[# 38–1]. To the extent that the Government seeks to hold Sarah B. Tranakos liable as a transferee for Arthur P. Tranakos's § 941 tax liabilities for the tax quarters 8606, 8609, and 8612, the Court GRANTS her motion for summary judgment.

IT IS SO ORDERED.